Appeal of **MANOMET CRANBERRY COMPANY.**    Docket No. 341.

> A taxpayer sold property for $139,500, receiving $45,100 in cash and a mortgage for $94,400. In a subsequent taxable year it foreclosed the mortgage, bidding in the property for the amount of principal and interest secured and costs, and applied its lien in payment of the price. *Held,* that, except to the extent of the interest and costs realized through application to the purchase price, the taxpayer derived no taxable gain in the year of reacquisition.

Submitted January 27, 1925; decided February 28, 1925.

*Henry Herrick Bond, Esq.,* for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

### FINDINGS OF FACT.

The taxpayer was an association organized in 1896 and incorporated in 1920 under the laws of Massachusetts. It was the owner of a cranberry bog on Cape Cod. In 1916 it sold its property to one Edward P. Washburn for an agreed price of $150,000, of which $10,000 was paid in cash at that time. Thereafter, by agreement of the parties, the sale price was reduced to $139,500. In 1917, $29,500 in cash was paid and a mortgage for $100,000 given for the balance of the sale price. During 1917 and 1918, the taxpayer received interest upon the mortgage note and a payment on account of principal of $5,600. The record does not show the amounts of interest paid in the respective years. Default having been made under the mortgage, it was foreclosed, and, on January 28, 1919, the taxpayer purchased it at a sheriff's sale for the unpaid principal ($94,400) and

interest (amount not appearing) secured by the mortgage plus the expenses of foreclosure (amount not appearing), applying its lien in payment.

Evidence was offered by the taxpayer of the value of the property at the time of its reacquisition by the taxpayer, but for reasons which appear in the opinion it is unnecessary for us to make any findings with respect to this value.

In connection with the reacquisition of the property, the taxpayer paid legal expenses amounting to $1,155.95. During the years 1917 and 1918, while the property was held by Washburn, municipal taxes accrued amounting to $4,013.56, which were unpaid and were a charge against the property on January 28, 1919.

A revenue agent examining the taxpayer's books added to net income reported, among other items, one of taxable gain on reacquirement of assets, amounting to $38,303.13, on the theory that the reacquisition of the property by the taxpayer came within the provisions of article 46 of Regulations 45. With certain adjustments this report was adopted by the Commissioner, who determined a deficiency in income and profits taxes for 1919 of $14,611.89, from which determination this appeal was taken.

### DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final determination will be settled on fifteen days' notice in accordance with Rule 50.

### OPINION.

IVINS: The only question at issue in this appeal is whether the taxpayer should be regarded as having received taxable income as the result of the reacquisition of the property mentioned in the findings at the foreclosure sale in 1919.

The dispute arises out of the application by the Commissioner of article 46 of Regulations 45 to a case in which we do not consider it applicable. The article deals with sales of real estate in which there is a substantial initial payment, deferred payments being secured by mortgage, the obligations for deferred payments being regarded as equivalent to cash. The article provides:

> *Deferred payment sales of real estate not on installment plan.*—In class (2) in article 44 the obligations assumed by the buyer are much better secured because of the margin afforded by the substantial first payment, and experience shows that the greater number of such sales are eventually carried out according to their terms. These obligations for deferred payments are therefore to be regarded as equivalent to cash, and the profit indicated by the entire consideration is taxable income for the year in which the initial payment was made and the obligations assumed. If the buyer defaults and the seller regains title to the land by agreement or process of law, retaining payments previously made, he may deduct from his gross income as a loss in the year of repossession any excess of the amount previously reported as income over the amount actually received, and must include such real estate in his inventory at its original cost to himself (less any depreciation as defined in articles 161 and 162). See article 153.

The latter part of the article dealing with the recovery of the property upon default of payment is a liberal construction of the

statute calculated to relieve the taxpayer in cases where he has reported as income a part of his profit not represented by cash receipts, and is later compelled to repossess the property sold without having received cash for all the profit upon which he has paid the tax.

The taxpayer was possessed of property claimed to have been worth $139,500 on March 1, 1913. In 1916 it sold this property for an agreed price of $150,000, later reduced to $139,500. On this transaction, if the claim as to 1913 value be correct, no profit was reportable. Cash was received on account of the purchase price to the extent of $10,000 in 1916, and $29,500 in 1917, and a mortgage for $100,000 was taken for the balance. Interest on this mortgage was received in 1917 and 1918, and the principal reduced by payment of $5,600, leaving a balance of $94,400. On default in payment of the mortgage it was foreclosed in 1919 and the taxpayer repossessed itself of the property by purchasing it at the sheriff's sale for the unpaid principal and interest secured by the mortgage plus the expenses of foreclosure.

The Commissioner reasons that the property when repossessed by the taxpayer should be regarded as worth its 1913 value; that by taking it the taxpayer found itself in a situation where it was better off to the extent of $45,100 than at March 1, 1913, because it received that much cash on account of principal, and has its original property back; and that it should be taxed for the year 1919 on a gain of $45,100 reduced by certain deductions. The taxpayer contends that, if the Commissioner's theory be correct, it should be allowed to offset, against this gain, depreciation alleged to have occurred in the value of the property while in the hands of the vendee, amounting to as much as the alleged gain, and it has submitted depositions to prove such depreciation. The Commissioner contends that the depositions do not establish any such depreciation as is claimed by the taxpayer. It seems to us unnecessary to go into the extent of the depreciation, if any, for the reason that we do not think the Commissioner's theory sound.

The net effect of article 46 of Regulations 45 is to postpone the taxation of an increment until final realization thereof, even though in order to do so it may be necessary to treat several transactions as one. By such a regulation certainly no harm is done to the taxpayer; and if the Government is delayed in the collection of a tax on increment, when, by treating the transactions as separate, it might insist upon the collection of it, that is not a matter now before us for consideration.

But we do not think that the Commissioner is at liberty to treat several transactions as one where the net effect of so doing will be to the disadvantage of the taxpayer and where the result may be to impose a tax upon an increment which may never be realized.

The taxpayer sold its property in 1916. The sale constituted a completed transaction. If there were any profit on this transaction, it should have been taxed for 1916, at 1916 rates. It received on account of the sale price $45,100 in cash and a mortgage for $94,400. In 1919 it bought the property back for $94,400 plus accumulated unpaid interest and the cost of the foreclosure, applying the claims

secured by the mortgage in payment of the price. There is no evidence to show that the property was worth more than the price so paid for it; but, even if there were, it would not constitute a realized gain until such time as the property might be disposed of. The mere fact that the property was worth $139,500 on March 1, 1913, or at the time of sale in 1916, does not justify the Commissioner in saying that when the taxpayer acquired it in 1919 at a cost of $94,400, plus interest and foreclosure costs, it realized a gain.

The interest received by the taxpayer during 1917 and 1918 was income to it, and the unpaid lien for interest applied by the taxpayer in purchasing the property at foreclosure sale was realized by such application in 1919. The foreclosure costs paid by the taxpayer in 1919 were part of the purchase price of the property then acquired, and they were added to the debt in effect collected by application to the purchase price, so they also constitute income for 1919.

The accrued municipal taxes for 1917 and 1918 of $4,013.56 and the legal expenses were charges against the land at the time of its reacquisition by the taxpayer in 1919, and when paid by the taxpayer increased its capital investment by that amount, but do not constitute deductions from income any more than would the extinction of any other lien, subject to which the property might have been acquired. Likewise, the legal expenses, amounting to $1,155.95, should be treated as capital investment, being part of the cost of acquiring the land. Depreciation for 1916 and 1917, computed by the Commissioner at $1,627.36, might have been a proper deduction for the owner of the land in those years, but can not be taken advantage of by the taxpayer.

If the Commissioner is still in a position to open the 1916 tax and can show that the value of the property on March 1, 1913, was less than $139,500, he may assess a tax upon the difference representing gain for that year. For the year 1919 the taxpayer's gain is represented by the amounts of accrued interest added to the principal and realized through application to the purchase price in the foreclosure sale and the foreclosure costs similarly realized. The taxpayer should be regarded as having acquired in 1919 a capital asset at a cost consisting of the sum of the following:

| | |
|---|---|
| Principal and mortgage | $94,400.00 |
| Accrued interest added at time of foreclosure | (1) |
| Tax liens | 4,013.56 |
| Legal expenses | 1,155.95 |

This sum will constitute the basis for computing profit or loss upon any subsequent disposition of the property by the taxpayer.

It appears that in the revenue agent's report he deducted from the gross profit computed on his theory the items of $1,155.95 for legal expenses and $4,013.56 for taxes accrued in 1917 and 1918, and that in computing the deficiency the Commissioner allowed the same deductions over again. If the Commissioner's theory were sustained, this duplication would have to be adjusted, but, as we have pointed out, these items should not enter into the computation of the 1919 tax at all.

---

[1] Amount does not appear in record.