LAFAYETTE LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41721, 42663. Promulgated September 6, 1932.

*A. E. James, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

## OPINION.

Marquette: The petitioner claims as deductions the amounts equal to interest on deferred dividends paid during the taxable years to holders of a certain class of insurance policies written by the petitioner. The policy contract did not require such payment of interest,

nor did it contain any optional provisions calling for such payment. Therefore, the respondent contends that such interest payments were voluntary on the petitioner's part, were really additional dividends, and do not constitute allowable deductions within the meaning of the Revenue Acts of 1924 and 1926. The provision here applicable is section 245 (a)(8), which is the same in both statutes, and reads as follows:

SEC. 245. (a) In the case of a life insurance company the term "net income" means the gross income less—

\* \* \* \* \* \* \* \*

(8) All interest paid or accrued within the taxable year on its indebtedness \* \* \*.

The term "interest" has a well known meaning. It is defined in the Standard Dictionary as "an agreed or statutory compensation accruing to a creditor during the time that a loan or debt remains unpaid." A similar definition has been followed by this Board. Cf. *Greenville Textile Supply Co.*, 1 B. T. A. 152; *Joseph W. Bettendorf*, 3 B. T. A. 378; *Fall River Electric Light Co.*, 23 B. T. A. 168.

In our opinion the amounts paid during the taxable years by petitioner to holders of deferred dividend policies were not interest payments within the proper meaning of the term. There was no agreement between petitioner and its policyholders calling for such payments. There was no statutory requirement compelling such payments, so far as we are advised. The deferred dividends, upon which the so-called interest was computed, were not loans made by the policyholders to the petitioner. Nor can it be said that the deferred dividends constituted debts owed by petitioner during the 20-year period of the tontine policies. A debt in its general sense is "a specific sum of money which is due or owing from one person to another, and denotes not only the obligation of the debtor to pay, but the right of the creditor to receive and enforce payment." *J. S. Cullinan*, 19 B. T. A. 930. During the tontine period none of the deferred dividends constituted "a specific sum of money due or owing" from petitioner to a policyholder and enforceable by the latter. Not until the end of such period could it be determined who of the policyholders might be entitled to deferred dividends. Indeed, it is quite conceivable that none would be so entitled. It is clear, we think, that under such circumstances the so-called interest payments could not properly be deemed interest. They constituted additional dividends rather than interest. In *Farmers' Cooperative Ass'n*, 5 B. T. A. 61, and again in *Trego County Cooperative Ass'n*, 6 B. T. A. 1275, the by-laws of each group provided that interest at the rate of 8 per cent should be paid anually on all capital stock. In each case we held that such payments were not deductible as interest

paid, but were dividends. We think the same principle applies here and on that point the respondent's determination is sustained.

The next question is whether there should be included in petitioner's gross income the rental value of space occupied by petitioner for its business purposes in a building owned by it. We have considered this question on other occasions and have held that gross income of a life insurance company may not be increased by the amount of the rental value of space so occupied, and deductions for taxes and other expenses respecting such building may not be denied or abridged because such rental value is omitted from the gross income. *Independent Life Insurance Co. of America*, 17 B. T. A. 757; *Reserve Loan Life Insurance Co.*, 18 B. T. A. 359; *Two-Republics Life Insurance Co.*, 21 B. T. A. 1355. Those cases are controlling here and the petitioner's gross income for each taxable year should not include rental value of the space occupied by it in its own building.

The third allegation of error, relating to deductions for exhaustion, wear and tear of property in the amounts of $1,201.49 for 1926 and $2,058.34 for 1927, is admitted by the respondent. Those amounts, therefore, will be allowed as deductions for the respective years in recomputing the deficiencies.

The last question raised by the respondent is whether petitioner is entitled to deductions for depreciation of furniture and fixtures used in the underwriting portion but not in the investment portion of its business. The provisions of the Revenue Act of 1926 which are applicable here are as follows:

SEC. 244. (a) In the case of a life insurance company the term "gross income" means the gross amount of income received during the taxable year from interest, dividends and rents.

\* \* \* \* \* \* \*

SEC. 245. (a) In the case of a life insurance company the term "net income" means the gross income less—

\* \* \* \* \* \* \*

(7) A reasonable allowance for the exhaustion, wear and tear of property \* \* \*.

The respondent contends that, as the statute confines petitioner's gross taxable income to receipts of interest, dividends and rents, therefore, the deductible allowance for depreciation of property logically and properly includes only such property as petitioner used in the production of its taxable income. In our opinion that contention is not well founded. In Regulations 69, construing the revenue act, the respondent says, in article 685 (2), that "The deduction allowed by section 245 (a) (7) for depreciation is identical with that allowed other corporations by section 234 (a) (7)." That limits the allowance for depreciation to the "exhaustion, wear and tear of property used in the trade or business." Unquestionably the trade or business

of this petitioner covered not only investments of its funds, but the writing and issuance of life insurance policies, collecting premiums, and the like. While there were two phases of petitioner's activities, the underwriting and the investment, the two combined constituted its business. Each was dependent upon and related to the other, and both were necessary factors for the success of the business.

Had Congress desired to limit the depreciation allowance in the manner now urged by respondent, it would undoubtedly have so worded the statute. No such limitation is expressed, however, and we find nothing in the statute to indicate an intention to create such a restriction. In our opinion, therefore, the petitioner is entitled to the amounts claimed by it for depreciation on its furniture and fixtures, namely, $788.88 for the year 1926 and $861.40 for the year 1927.

*Decision will be entered under Rule 50.*