THE MANHATTAN LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60827. Promulgated May 17, 1933.

*John F. McCabe, Esq.*, for the petitioner.
*James K. Polk, Esq.*, and *Harold F. Noneman, Esq.*, for the respondent.

#### OPINION.

ARUNDELL: This proceeding involves the redetermination of a deficiency of $879.19 in income tax for 1928.

In its income tax return for 1928 the petitioner, a New York corporation engaged in the life insurance business, claimed a deduction for exhaustion on furniture and fixtures used in both the investment and underwriting departments of its business. In his audit of the return the respondent allowed the sum of $1,169.08 as a deduction for exhaustion on the portion of the assets used in the investment department, and disallowed the remainder on the ground that the statute made no provision for deducting depreciation on property employed in the production of income in the underwriting department. The refusal of the respondent to allow exhaustion on assets used in both departments, which the parties have stipulated amounted to $4,143.44, is claimed by the petitioner to be error.

We had the identical question in *Lafayette Life Ins. Co.*, 26 B.T.A. 946. We there held, based upon the lack of any indication of legislative intent to the contrary, that life insurance companies were entitled to take depreciation on assets used in the underwriting as well as the investment departments of their business. The respondent recognizes that this case is opposed to his contention and asks us to reconsider the question. We think the *Lafayette* case was properly decided and we adhere to the rule announced therein. Following that decision, exhaustion of the assets will be allowed in the amount of $4,143.44.

In 1926 the petitioner acquired title to a building subject to a lease expiring August 1, 1928. A cancellation of the lease was obtained,

effective October 1, 1927, by a payment of $25,000 to the lessee. On the same day the property was leased to a new tenant at a higher rental for a term of 10 years from October 1, 1927. The petitioner paid a commission of $2,490 for services rendered by a broker in connection with the cancellation of the old lease and fees aggregating $9,990 to brokers for obtaining the new lease. The new lessee defaulted in the payment of rent, with the result that the lease was terminated on June 28, 1928, by court order.

Of the total of $37,480 paid by petitioner in 1927 in connection with the cancellation of the old lease and the acquisition of a new tenant, it appears that the respondent has allowed $1,561.67 as a deduction in that year. The remainder, $35,918.33, petitioner claims as a deduction in 1928 as "real estate expenses" under section 203 (a) (6) of the Revenue Act of 1928. Such expenses, where allowable, are those "paid during the taxable year," and so, assuming for the moment that the expenditures are of this kind, it is clear that the petitioner may not have the deduction in 1928, inasmuch as they were paid in 1927.

In the alternative petitioner asks that it be allowed exhaustion deductions for that part of the cost of canceling the old lease that is allocable to the period from January 1, 1928, to the date of expiration of that lease, August 1, 1928, and for that portion of the cost of securing the new lease which is allocable to the period from January 1, 1928, to the termination of the lease on June 28, 1928.

Counsel for the respondent now concedes that under the decision in *Henry B. Miller*, 10 B.T.A. 383, petitioner is entitled to deduct in 1928 seven tenths of $27,490, which represents the cost of canceling the old lease. The lease when canceled, effective October 1, 1927, had 10 months to run, and 7 months of that period fell within the year 1928.

The remaining question is whether the cost of securing the new lease, $9,990, is deductible in 1928. Counsel for respondent concedes that the portion allocable to the period January 1 to June 28, 1928, based on the expected 10-year life of the lease, is allowable as a deduction in 1928. In the leading cases that have dealt with the question of deducting costs incurred in connection with acquiring tenants under long-term leases the courts have allowed such costs to be spread over the life of the lease without definitely characterizing them as either capital items or expenses. In *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381, it was said that whether the broker's fee was regarded as cost of an exhaustible capital asset or a business expense, "it would seem that truly to reflect annual income such a fee should be spread over the term of the lease rather than charged against the first year's income." In *Central Bank Block*

*Assn.* v. *Commissioner,* 57 Fed. (2d) 5, the court said that the sum paid an agent in 1924 for negotiating a 50-year lease may be regarded either as an investment in an exhaustible asset " or as the payment in 1924 of business expenses which are attributable to the subsequent years covered by the lease," and in either event " a spreading or prorating of the amount of the outlay over the term of the lease would be required truly to reflect annual income during that term." In *William Penn Hotel Co.,* 23 B.T.A. 566, the lessee under a 10-year lease, obtained a 10-year extension, at a cost of $1,000, when the original lease still had 7 years to run. We held that the unexhausted portion of the original cost plus the additional $1,000 should be spread over the 17-year life of the two leases. The rule to be gathered from these cases is that in order truly to reflect taxable income there should be a correlation between income and the cost of producing it. See *United States* v. *Anderson,* 269 U.S. 422; *American National Co.* v. *United States,* 274 U.S. 99. Where there is a change in any of the elements taken into consideration in determining net income, changes in others may be necessary in order that income may be truly reflected. The necessity of maintaining somewhat of a balance in this respect is recognized in *William Penn Hotel Co., supra.* This principle is carried into the statute governing this case in section 43, Revenue Act of 1928, which provides that deductions and credits shall be taken for the year in which " paid or incurred " or " paid or accrued " dependent on the method of accounting, " unless in order to clearly reflect the income the deductions or credits should be taken as of a different period." If, in the present case the lease had existed for its full 10-year period, undoubtedly the cost to the petitioner would properly be spread over that period. But within the first year the property which it was expected would produce income for 10 years was completely exhausted. As early as February 1928, the tenant was in arrears. When this change took place in the element of time over which income was expected to be received—and was known to have occurred—it seems to us only proper in order accurately to reflect income that a corresponding change should be recognized in the period over which the cost should be spread. The lease was to run 10 years from October 1, 1927. In 1927 it was not known that termination would take place the following year and so only an aliquot part of the cost, based on the 10-year term, should be allowed as a deduction in that year. The remainder of the cost of $9,990 should, in our opinion, be allowed as a deduction for the year 1928.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN dissents.