MISSOURI STATE LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58241, 62386.   Promulgated November 23, 1933.

*Earl W. Shinn, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

OPINION.

LEECH: Petitioner, a Missouri corporation, carrying on a life insurance business, with its home office at St. Louis, Missouri, by these proceedings consolidated for hearing and decision, seeks redetermination of deficiencies of $4,388.52 and $66,794.13, determined by respondent for the calendar years 1928 and 1929, respectively. The same eight issues are presented by each petition for each year. Respondent raises additional issues by amended answers, charging that he, in error, (a) allowed deductions in each of the taxable years of amounts representing taxes paid in those years upon real estate purchased by petitioner, where such taxes accrued as a liability of the former owner of the property and existed as a lien upon the property at the time of its acquisition by petitioner, and (b) for the year 1929 allowed deductions representing advances to tenants. He contends that such payments do not represent proper deductions and asks that net income as determined by him be increased by these amounts and the deficiencies be increased accordingly.

Most of the facts necessary to a determination of the issues are formally stipulated by the parties. Additional facts to those stipulated were established at the hearing. We adopt and incorporate herein by reference the formal stipulation as findings of fact. Additional facts found by us upon the testimony of witnesses at the hearing are set out under the separate headings of the issues to which such facts pertain.

ISSUE No. 1.

*Reserve for Premium Reduction Coupons.*

Respondent reduced petitioner's reserve, as determined by it, for computation of its deduction under section 203 (a) (2) of the Revenue Act of 1928, by the amount set up by it to meet its liability upon matured coupons under policies known as " guaranteed premium reduction coupon policies." These policies carried coupons attached, maturing on given dates, the policy contract obligating the company to pay the fixed sum stated in the coupon upon maturity, if all premium payments then due had been met. The policyholder is given the option of receiving payment of the coupon in cash, using

it to reduce premium payments, purchasing additional insurance, or leaving it at a fixed rate of interest subject to demand.

The record shows that the reserves maintained by petitioner in respect to these coupon obligations are necessarily set aside from premium payments to meet at maturity one of the fixed and definite obligations of the policy and are consequently legal reserves. *McCoach* v. *Ins. Co. of North America*, 244 U.S. 585; *New York Life Ins. Co.* v. *Edwards*, 271 U.S. 109; *United States* v. *Boston Ins. Co.*, 269 U.S. 197.

The amounts of the reserves in question for each of the taxable years are stipulated. Upon this issue we sustain the petitioner. *Farmers Life Ins. Co.*, 27 B.T.A. 423; *Reserve Loan Life Ins. Co.*, 18 B.T.A. 359; petition for review dismissed, C.C.A., 7th Cir., Jan. 14, 1933; *Standard Life Ins. Co. of America*, 13 B.T.A. 13; affd., 47 Fed. (2d) 218; *Commissioner* v. *Western Union Life Ins. Co.*, 61 Fed. (2d) 207.

### Issue No. 2.

*Depreciation on Assets Used in the Underwriting Department of Petitioner's Business.*

Respondent allowed depreciation upon assets used in the investment department of petitioner's business, but disallowed depreciation of assets used in the underwriting department. The amount of depreciation actually sustained is stipulated.

The question is controlled by our decision in *Lafayette Life Ins. Co.*, 26 B.T.A. 946. We are advised of the decision of the Circuit Court of Appeals for the 7th Circuit (Oct. 20, 1933) upon the appeal of this case, reaching the opposite conclusion upon this question. However, since our decision we have consistently applied the rule there laid down. *Manhattan Life Ins. Co.*, 28 B.T.A. 129, and several cases decided by memorandum opinion. We are still of the opinion that our conclusion on this question is correct, and, therefore, hold that petitioner is entitled to the deduction sought.

### Issue No. 3.

*Deduction—Interest Paid on Dividends to Accumulate under Terms of Outstanding Policies.*

Petitioner paid in 1928 the sum of $30,421.13 and in 1929 the sum of $33,945.05 to policyholders as interest upon dividends apportioned but left by the policyholder to accumulate at a specified rate of interest. Respondent admits that petitioner is entitled to the deduction of these amounts, and we accordingly so hold.

*Deduction—Amounts Paid in 1928 and 1929 as Interest upon Deferred Dividends Under Policies Whose Tontine Period Ended in Those Years.*

Petitioner paid in 1928 the sum of $46,237.13 and in 1929 the sum of $42,091.91 as interest upon deferred dividends under policies whose tontine period ended in those years. The following is a specimen of the material portions of the policy in question:

This policy shares in the profits of the company, as follows:

The accumulation period ends on the _____ day of _____ 19____. If the insured is then living and all premiums have been paid, the company will apportion to this policy its share of the accumulated profits, and

THE ENTIRE CASH VALUE of this policy shall then consist of_____

1. The guaranteed cash value of $_____ and
2. The profits in cash then apportioned.

The insured may then select one of the following Options of Settlement:

Surrender Options.

1. Receive the entire cash value as stated above, in cash; or
2. Receive the entire cash value as stated above, converted into an annual cash income for life; or,
3. Receive the entire cash value as stated above, converted into profit-sharing paid-up life insurance.

and in any such case discontinue this policy, or,

Continuing Options.

4. Receive the profits in cash; or,
5. Receive the profits converted into an annual cash income for life; or
6. Receive the profits converted into additional profit-sharing paid-up life insurance, subject to evidence of insurability satisfactory to the Company.

and in any such case continue this policy for $ _____ as profit-sharing insurance for life by payment of the same premium as previously.

At the end of the accumulation period the Company will send to the insured a written statement of the results under the foregoing options of settlement. If the insured's written selection of one of these options is not received at the Home Office within one month thereafter, it is agreed that settlement shall be made under Option 4, and the profits held by the Company at three per cent interest, subject to the written demand of the insured.

If this policy is continued beyond the accumulation period, profits will be apportioned at the end of each year thereafter during its continuance and shall be payable in cash.

The method followed by petitioner with respect to the apportionment of the deferred dividends on these policies was to set aside each year an amount as representing the profits of such year allowable to the policy, the total of these sums representing the sum apportioned as a deferred dividend at the close of the tontine period. In each

year it also set aside on each policy an amount designated as interest and computed at 3½ percent compounded annually upon the amounts theretofore set aside as apportioned profits of prior years. The total of these sums was paid to the policyholder at the close of the period. The question here presented is whether those portions of the payments made in the taxable years which represented the so-called *interest* computed, were in fact payments of interest upon debts or obligations of petitioner or whether the entire payment in each case was one of deferred dividends.

In *Lafayette Life Ins. Co., supra,* we had a situation substantially similar to this before us. In that case we said:

Nor can it be said that the deferred dividends constituted debts owed by petitioner during the 20-year period of the tontine policies. A debt in its general sense is "a specific sum of money which is due or owing from one person to another, and denotes not only the obligation of the debtor to pay, but the right of the creditor to receive and enforce payment." *J. S. Cullinan,* 19 B.T.A. 930. During the tontine period none of the deferred dividends constituted "a specific sum of money due or owing" from petitioner to a policyholder and enforceable by the latter. Not until the end of such period could it be determined who of the policyholders might be entitled to deferred dividends. Indeed, it is quite conceivable that none would be so entitled. It is clear, we think, that under such circumstances the so-called interest payments could not properly be deemed interest. They constituted additional dividends rather than interest.

It will be noted that there is no agreement in the policy here in question to pay interest upon deferred dividends, and we think it immaterial how petitioner computes the amount allocable to the policy for each year, the total of which it pays at the close of the tontine period, which is the date its obligation to make any payment accrues. Petitioner attempts to distinguish the above cited case upon the ground that the apportionment of profits for each year and the computation of interest thereon was made at the close of the tontine period, whereas in the present case it was made each year and the tentative credits to the policy then transferred from surplus. We see in that no material difference. It was at most, in our opinion, merely a different method of recording upon the corporate books a transaction in all respects similar to the one before us in *Lafayette Ins. Co., supra.* In both cases the obligation was similar and the payments made were identical in character.

Our decision in the *Lafayette Life Ins. Co.* case, *supra,* was reversed on appeal, *supra,* upon this issue, also. However, having consistently followed the rule we there adopted, in a number of cases, decisions in which were by memorandum opinion, and remaining convinced of its correctness, we adhere thereto and sustain respondent upon this issue.

*Inclusion in Income of Rental Value of Space Occupied by Petitioner in Its Home Office Building.*

For the calendar year 1928 petitioner included in its gross income the sum of $85,948.89 as representing the rental value of space occupied by it in its home office building and was allowed by respondent, under section 203 (b) of the Revenue Act of 1928,[1] deductions for depreciation, taxes and operating expenses on said building. For the calendar year 1929 petitioner included no amount in its reported gross income as representing such rental value and was denied by respondent, in computing the deficiency for that year, the deductions for taxes, depreciation and operating expenses. Petitioner contends that income for 1928 should be reduced by the rental value reported in that year and that income for 1929 should be reduced by the amount of depreciation sustained and taxes and expenses paid. All facts necessary for a determination of the issue are formally stipulated.

This Board has held section 245 (b) of the Revenue Acts of 1921 and 1924 to be unconstitutional. *Independent Life Ins. Co. of America*, 17 B.T.A. 757; *Reserve Loan Life Ins. Co., supra; Lafayette Life Ins. Co., supra; Two-Republics Life Ins. Co.*, 21 B.T.A. 1355; *Jefferson Standard Life Ins. Co.*, 25 B.T.A. 1335; *Volunteers State Life Ins. Co.*, 27 B.T.A. 1149.

We are aware of the fact that the Circuit Court of Appeals for the Seventh Circuit in deciding (Oct. 20, 1933) the appeals in *Lafayette Life Ins. Co., supra*, and *Rockford Life Ins. Co.* (memorandum opinion of this Board), held to the contrary. Since our decision in *Independent Life Ins. Co., supra*, we have applied the rule there laid down in a number of cases. (See citations in preceding paragraph.) It may be noted, further, that this question is pending on appeal in the Circuit Court of Appeals for the Sixth Circuit, *Commissioner* v. *Independent Life Ins. Co.*, 62 Fed. (2d) 1066; 288 U.S. 592; as well as in the Circuit Court of Appeals for the Fourth Circuit, *Jefferson Standard Life Ins. Co., supra*. We are still of the opinion that the conclusion reached by us in the cited cases is correct and therefore hold that petitioner is entitled under this issue to the relief asked.

---

[1] (b) *Rental value of real estate.*—No deductions shall be made under subsection (a) (6) and (7) of this section on account of any real estate owned and occupied in whole or in part by a life insurance company unless there is included in the return of gross income the rental value of the space so occupied. Such rental value shall be not less than a sum which in addition to any rents received from other tenants shall provide a net income (after deducting taxes, depreciation, and all other expenses) at the rate of 4 per centum per annum of the book value at the end of the taxable year of the real estate so owned or occupied.

## ISSUE No. 6.

### *Interest Realized as Income Received.*

Petitioner during the taxable years 1928 and 1929 acquired numerous parcels of real estate upon which it held mortgages as security for loans. Some of these were acquired from the owners by voluntary conveyance under quitclaim or warranty deeds in consideration of the release of the indebtedness, including interest due. Others were acquired at foreclosure sales in which petitioner bid in the properties for the sum of the loan plus accrued interest. In all cases petitioner entered these properties on its books at figures totaling the loan plus interest and, in the case of foreclosed properties, the cost of such foreclosure. The properties in question, the amount of the loan and interest assumed at the time of purchase are all stipulated by the parties.

Petitioner contends that these transactions can not be considered as mere purchases of property, but really constitute recoveries of only a portion of the face of the loans as in nearly all cases the properties acquired had then fair market values less than the principal sums of the loans. Respondent contends, that petitioner acquired the properties in each case for a consideration representing the principal and accrued interest on the loan and has constructively received its interest, and that, in determining the deficiencies for each year respondent has included in income the amount of accrued interest involved in the transactions taking place in such year. A somewhat similar question was before us in *John Hancock Mutual Life Ins. Co.*, 10 B.T.A. 736. We held there that petitioner was not in receipt of income representing accrued interest, for the reason that he had only bid the sum of the principal of the loan, and that the total proceeds of the foreclosure sale were insufficient to satisfy the principal debt and there was nothing to apply to interest accrued.

In *Reserve Loan Life Ins. Co., supra,* the petitioner, a life insurance company, had acquired various properties at foreclosure. In that case we said:

In the instant case the record is silent as to whether the bid prices at which the petitioner acquired the farms were for the principal and the interest of the mortgage or for the principal only, or for less than the principal or at prices in excess of principal and interest. The facts show that upon acquiring title to the farms the petitioner in its books of account transferred these mortgage loan investments from its mortgage loan account to an account of real estate owned, for the full amount then invested in the respective mortgage loans, including the accrued and unpaid interest here involved, and as a part of the transaction credited its income account of interest on mortgage loans with the amount of interest then accrued and unpaid. In the absence of evidence showing at what prices the petitioner acquired the respective farms

at foreclosure, we are not in a position to hold that the amounts of interest here in controversy were improperly included in the petitioner's income for the respective years.

In *Ewen MacLennan*, 20 B.T.A. 900, petitioner, the mortgage creditor, had bid in the property at foreclosure for the debt, accrued interest, and costs of sale. There we said:

Whether settlement was made in cash or by a partial application of credits due the buyer, the amount of accrued interest paid or applied as a credit is, under our decision in *Manomet Cranberry Co.*, 1 B.T.A. 706, taxable income to the petitioner.

In these sales petitioner was a voluntary purchaser. In those cases where the transaction was by agreement with the owner, who deeded his property in consideration of his release from the obligation representing the loan plus accrued interest, we assuredly would not permit such owner deduction, as a loss, of the difference between the cost of the place to him and the fair market value at the time conveyed to his creditor. If such sale is to the seller one at a consideration representing the liability released, the same consideration must be charged to the purchaser who passes it. In the case of purchases at foreclosure sales petitioner has bid in the property as a purchaser, has obligated himself for the money payment of his bid, and has exercised his right to satisfy such obligation by application of the indebtedness due under the loan contract.

We hold that petitioner in the instances in question has realized in income the accrued interest which represented part of the consideration with which it acquired title to the properties. There is much testimony in the record upon the question of the fair market values of the properties acquired. In our view of the situation such question is not material and accordingly no findings are made of those values other than that the fair market values of certain properties were less than the amount of the loan upon such properties plus accrued interest. Cf. *American Cigar Co.*, 21 B.T.A. 464; affd., 56 Fed. (2d) 425.

Issue No. 7.

*Depreciation.*

This issue is upon the disallowance by respondent of depreciation taken by petitioner upon eleven properties owned in the taxable years. The depreciable cost, amount of the depreciation taken, and the amount disallowed by respondent in respect to each property are stipulated by the parties. Additional facts, upon which depreciation as to each piece of property will be computed, are determined by us as follows:

*Syndicate Trust Building, St. Louis, Missouri.*—This is a steel, stone and concrete fireproof department store and office building of 16 stories and basement, erected in 1908. It was 23 years old when acquired by petitioner in 1929 and at that time had a normal useful life of approximately 27 years.

*Century Building.*—This is a stone building of 10 stories and basement, built in 1897 as a theatre and office building and remodeled in 1910. It was adjacent to the Syndicate Trust Building mentioned above, separated by an alley which was later built over by a new building constructed to make the Syndicate Trust and Century Buildings one operating building. It is agreed by both parties that this building over the alleyway had a normal life when constructed in 1919 of 50 years and a useful life of 40 years when acquired in 1929 by petitioner. The witnesses upon the question of the normal remaining life of the Century Building at the time acquired by petitioner differ to some extent, one being of the opinion that it had a life of 50 years from date of construction and that its life was not extended by the remodeling in 1910. The other witness was of the opinion that its life was 40 years when constructed and this life extended by 10 years as the result of the remodeling. Neither witness testified as to the effect upon its life by reason of the construction in 1919 of the " over-alley " building by which it was made an integral part of the Syndicate Trust Building.

Upon careful consideration of all the facts we are of the opinion that when acquired by petitioner in 1929 the building in question had a reasonable remaining useful life of approximately 27 years.

*Annex.*—This is a steel and brick building, the first floor used for retail store purposes and the upper floors for warehouse and workshop by the lessees of the department store portions of the Syndicate Trust and Century Buildings. This building had a normal useful life of 50 years when constructed and was 16 years old when acquired by petitioner in 1929. At that time it had a remaining life of usefulness of approximately 34 years.

*Criterion Theatre Building, St. Louis, Missouri.*—This is a small theatre building of brick and stone construction with some steel reinforcement. It was approximately 20 years old when acquired by petitioner in 1929 and had at that time a remaining normal useful life of approximately 20 years.

*Stanley Apartments, Chicago, Illinois.*—This is a four-story brick and concrete building constructed in 1916 and having a normal life of approximately 35 years from that date. It had a remaining normal useful life of approximately 24 years when acquired by petitioner in 1927.

*822–824 Leland Avenue, Chicago, Illinois.*—This is a three-story and basement stone front building constructed as a six-flat apartment but now used as a rooming house. It was acquired by petitioner in 1927, was 11 years old at that time and had a remaining normal useful life of 24 years.

*Vandervoort Hotel, Paragould, Arkansas.*—This is a four-story brick hotel of ordinary joist construction, not fireproof, with approximately 80 hotel rooms. It was 11 years old when acquired by petitioner in 1927. When built it had a normal useful life of 35 years and a remaining life of usefulness of 24 years when acquired by petitioner.

*Warehouse, Centralia, Illinois.*—This is a two-story brick warehouse, 50 by 100 feet, without basement and not fireproof. It was acquired by petitioner in 1928, was six years old at that time and had a remaining normal useful life of approximately 25 years.

*Brick store, Charleston, Missouri.*—This is a two-story brick store with composition roof and not fireproof. The first floor is used as a store space and the upper floor for storage. It was 33 years old when acquired by petitioner in 1928 and at that time had a remaining normal useful life of approximately 10 years.

*Brick store, Memphis, Tennessee.*—This is a three-story brick store, the first floor of which is used as a market. It was erected in 1906 and was in a dilapidated condition when acquired in 1928 by petitioner but had a remaining normal useful life at that time of approximately 10 years.

*Store and warehouse building, McAlester, Oklahoma.*—This is a three-story brick store building, semifireproof. It is well built and was 17 years old when acquired by petitioner in 1928, at which time it had a normal remaining useful life of approximately 23 years.

We hold that petitioner is entitled to depreciation on the properties listed above at rates based upon the approximate normal useful life of such properties when acquired by it, in accordance with the facts as above found by us.

ISSUE No. 8.

*Income Realized from Assets Acquired.*

On August 25, 1928, petitioner acquired all of the assets and business of the International Life Insurance Co. under a contract, a copy of which is a part of the formal stipulation of facts filed. The consideration to be paid consisted of the assumption by petitioner of all of the debts and policy obligations of the International Life, including the reinsurance of all of its outstanding life and annuity contracts and the agreement to pay an indeterminate amount pro-

vided in no event to be in excess of $5,625,000. The cash consideration is provided to be paid by application of 75 percent of any earnings or profits from assets so acquired and insurance taken over to reduce the deficit of International Life, the remaining 25 percent to be paid that company. When and if such deficit is eliminated and the balance sheet upon the International Life assets shows a surplus, it is to be prorated and paid 75 percent to International Life and 25 percent to petitioner, such payments to continue until the International Life shall have received total payments under the contract of $5,625,000 plus 5 percent interest on the unpaid balance of this sum from the date of the contract or until 15 years have elapsed from the date of the first semiannual balance sheet on which a surplus is shown, whichever event shall first occur.

Among the assets transferred to petitioner under this contract were various bonds, mortgage loans, and collateral loans upon which interest accrued but unpaid amounted to $801,091.65. Of this amount petitioner collected in 1928 the sum of $301,302.09 and in 1929 the sum of $194,482.84. Petitioner included these amounts in its income reported for the taxable years in question and now contends that such action was in error as such sums represented the liquidation of capital assets purchased by it.

The collections in question represent the income upon property belonging to petitioner at the time such income was realized, and petitioner is on a cash basis. These collections are not subject to inclusion in income of the International Life, which, as far as we know, may never have received any payment under the contract in question. Petitioner has taken over the business of that company. It is not merely a transaction of the purchase of assets, but a contract of reinsurance under which the policy liabilities of the International Life have been assumed by petitioner, and its assets, representing the investment of the legal reserves guaranteeing such policies, have been taken over and continue to guarantee such obligations. The amounts here in controversy, representing the earnings of such invested assets, could in no event represent income to either the International Life Insurance Co. or petitioner until realized by collection, and are, we think, clearly within the definition of gross income under section 202 (a) of the Revenue Act of 1928 which provides: " In the case of a life insurance company the term ' gross income ' means the gross amount of income received from interest, dividends and rents."

Even were it conceded that the accrued but uncollected items represented capital acquired by petitioner, they would upon collection be taxable to the extent, if any, that they exceeded the consideration paid. The burden is upon petitioner to show them not

to be subject to tax, or, in other words, to show the proportion of the total consideration allocable to these particular items. This it is manifestly unable to do. In fact the amount of the consideration is not determinable. It may be $5,625,000 or it may be nothing, depending upon future events impossible to forecast.

We can not find that this specific question has, in the case of an insurance company, been passed upon by us or by the courts. The case of *Pontiac Commercial & Savings Bank*, 11 B.T.A. 118; affd., 41 Fed. (2d) 602, is similar in many respects, and the reasoning of the court in its opinion approving the conclusion reached by us appears to apply equally to the facts here shown. In that case the court said:

> This interest having been assigned to petitioner, and yet having been omitted from the capital account, when collected by petitioner necessarily became income to petitioner just as it would have been to the Pontiac Savings Bank if collected before the transfer of the securities. These interest items when collected fell within the term "gross income" as defined in section 213 (a), Revenue Act 1918, 40 Stat. 1065. We do not think it can avail petitioner that the interest accrued while the securities were in the hands of its transferors. See *Taft v. Bowers*, 278 U.S. 478, 482, 49 S.Ct. 199, 73 L.Ed. 460, 64 A.L.R. 362. It was no less income when collected by the united bank than it would have been if collected by one of the units thereof before the consolidation. Cases cited to the effect that income such as profits, commissions, etc., earned during the life of a decedent but not due or payable at his death, are not taxable as income when collected, are not particularly helpful. There is no analogy between the status of the estate of a decedent and the situation presented here.

We hold that the amounts in question represented gross income to petitioner when collected by it.

ISSUE No. 9.

*Payments Made by Petitioner Representing Taxes Accrued Against Property Prior to Its Acquisition.*

By amendment to his answers in each appeal respondent questions the allowance granted by him of general property and special assessment taxes paid in the taxable year by petitioner upon property acquired by it in those years either by foreclosure or purchase. The facts are not in dispute. The parties have formally stipulated the facts in respect to the properties, dates of acquisition, amount of taxes, dates paid, periods for which paid, and dates of accrual under laws of the various states in which the properties are situated.

With respect to the general property taxes respondent contends that they represent merely the payment of an encumbrance existing upon property acquired at the date of acquisition and constitute liabilities of the former owner, their payment being merely a part of the capital expenditure made in acquiring a clear and unencumbered title. Petitioner contends that the provision of section 203 (a) (6)

of the Revenue Act of 1928 [2] grants the deduction as the payment is one of " taxes upon or in respect to real estate owned by the company." It contends that it is in any event entitled to deduction of that part of the tax for the year allocable to that portion of the tax year during which it was the owner of the property.

Petitioner cites our decision in *John Hancock Mutual Life Ins. Co.*, 10 B.T.A. 736, but we find in that case no support for its contention. There we said:

> When property is sold with a covenant that it is free and clear of encumbrance, the covenant is broken if prior to the sale taxes had become a lien upon the land. This is true where the taxes become a lien from the date of assessment, though they have not become due and payable at the time of the conveyance. See *Thompson on Real Property*, §3499, and cases therein cited, particularly *O'Connell* v. *First Parish in Malden*, 204 Mass. 118; 90 N.E. 580. If in such case the purchaser was legally required to pay the taxes, he would have recourse against the seller. It is then apparent that taxes which have become a lien against real estate in Massachusetts prior to the date of the sale are primarily an obligation of the seller and not of the purchaser. If then the purchaser of real estate agreed to pay a lien which he knew existed as a charge on the property at the time of its purchase, and if, in fact, he does discharge that lien by payment, he has not in fact paid taxes or interest of which the lien may have consisted, but he is simply completing his payments in the purchase of the property. The taxes and interest installments which he paid were the seller's taxes and interest installments and it was by an agreement and reduction in the purchase price that the purchaser paid them on behalf of the seller. The same principle applies where the sale is on the foreclosure of a mortgage.

We did not there hold that the proration of the tax payment was proper. Respondent in determining the deficiency had made such proration and the only question presented to us was whether petitioner was entitled to deduction of that portion of the tax representing the period prior to the foreclosure sale.

In *First Bond & Mortgage Co.*, 27 B.T.A. 430, we held that taxes paid by the purchaser on property acquired at a foreclosure sale, which represented at that time a lien on the property sold, could not be claimed as a deduction by such purchaser on computing net income. In the present case the properties were acquired after the tax liability accrued and were subject to a lien for its payment. We hold that petitioner is not entitled to deduction of the payments made. *Leamington Hotel Co.*, 26 B.T.A. 1004; *Grand Hotel Co.*, 21 B.T.A. 890; *H. H. Brown Co.*, 8 B.T.A. 112.

---

[2] (6) REAL ESTATE EXPENSES.—Taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company, not including taxes assessed against local benefits of a kind tending to increase the value of the property assessed, and not including any amount paid out for new buildings, or for permanent improvements or betterments made to increase the value of any property. The deduction allowed by this paragraph shall be allowed in the case of taxes imposed upon a shareholder of a company upon his interest as shareholder, which are paid by the company without reimbursement from the shareholder, but in such case no deduction shall be allowed the shareholder for the amount of such taxes.

With respect to the special improvement taxes the parties have stipulated the dates of acquisition of the several properties, the date in each instance of the assessment of the tax, and the proportion of the tax representing interest and maintenance charges. Respondent contends that in no event are these payments allowable deductions to petitioner, as they fall within the exception of the statute as " taxes assessed against local benefits of a kind tending to increase the value of the property assessed." He contends, that since the saving clause in section 23 (c) (3) of the Revenue Act of 1928, permitting the deduction by other corporations of so much of taxes assessed against local benefits as is properly allocable to maintenance or interest charges, is not found in section 203 of the act, it follows that no part of the tax is deductible by an insurance company.

With this contention we do not agree. Our decision upon the question of general property taxes disposes of the question in respect to the special improvement taxes which are shown by the stipulation to have been assessed prior to the acquisition of the several properties by petitioner. However, those taxes assessed subsequent to the acquisition of the property by petitioner are allowable deductions unless they come within the prohibition of section 203.

The specific allowance of the deduction of so much of special improvement taxes as represents interest and maintenance charges appears for the first time in section 23 (c) (3) of the Revenue Act of 1928. In prior acts the provision respecting corporations other than insurance companies is similar to that here under consideration, embodied in section 203 of the Revenue Act of 1928, and under these former acts we have uniformly held that taxes representing interest and maintenance charges, such as these, were not of a character tending to increase the value of the property assessed and consequently were not excepted from allowance as a deduction. *Evens & Howard Fire Brick Co.*, 8 B.T.A. 867; *Andrew Little*, 21 B.T.A. 911.

This petitioner is granted by the act here applicable the deduction of taxes, except those assessed against local benefits *of a kind tending to increase the value of the property assessed*, and the question of its right to deduction is determined by the answer to the inquiry of whether or not the taxes representing interest and maintenance are such as tend to increase the value of the property. We hold that these taxes, to the extent that they represent interest and maintenance, are not of such character and are consequently deductible by petitioner in those cases where, under the stipulation filed, the properties are shown to have been acquired prior to the assessment of the tax.

For the year 1929, however, respondent affirmatively charges error on his part in his allowance of a deduction of $11,244.27 represent-

ing " advances " by petitioner in this amount to tenants. The record fails to show what these advances represent. If they were advances for capital improvements to the property they would not be deductible, but if they merely represented advances for purchase of seed and fertilizer or some similar expense item and return was realized by petitioner only in the rent received, they would be deductible as an expense. The burden is upon respondent to show the item not allowable and he has failed to make such showing. His allowance of this item will not be disturbed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, dissenting: The decision on Issue No. 5 of the majority opinion is predicated upon the assumption that certain provisions of the income tax law relating to  life insurance companies are unconstitutional. I disagree. See *Commissioner* v. *Lafayette Life Ins. Co.*, 67 Fed. (2d) 209, and *Commissioner* v. *Rockford Life Ins. Co.*, 67 Fed. (2d) 213. I also dissent from the decision on Issue No. 2. See *Commissioner* v. *Lafayette Life Ins. Co.*, *supra.*

VAN FOSSAN agrees with this dissent.