**WELLS FARGO BANK & UNION TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11502.

Circuit Court of Appeals, Ninth Circuit.

Aug. 26, 1947.

Lloyd W. Dinkelspiel, L. C. Baker, and Heller, Ehrman, White & McAuliffe, all of San Francisco, Cal., for petitioner.

Sewall Key, Acting Asst. Atty. Gen., and Helen R. Carloss, Newton K. Fox and Carl-ton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, DENMAN, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

This case was presented to the Tax Court upon a stipulation of facts, which discloses the following:

Wells Fargo Bank & Union Trust Co., Petitioner, as trustee of the Clara Hellman Heller Trust, on October 31, 1939 leased a ranch of approximately 37,333 acres situated in California to Edward H. Heller. The lease was for the term of five years, provided for an annual rental and gave the lessee the right to cancel at the end of any year of the term upon ninety days' written notice. Heller, as lessee, went into possession and entered into subleases of various portions of the ranch.

In 1940, the United States entered into negotiations with petitioner for the purpose of leasing or buying the ranch in question, later known as Camp Roberts. To that end, petitioner secured a cancellation of its lease to Heller, who, in turn, canceled the subleases which he made. Under the agreement between petitioner and Heller the lease of October 31, 1939 was canceled in consideration for which petitioner agreed to pay to Heller the sum of $65,000 in installments of $9,000 on or before December 15, 1940 and of $8000 each on the fifteenth day of each month commencing with the fifteenth day of January, 1941, until the full amount was paid. The agreement further provided that these sums were payable out of and only out of the amounts received or to be received by petitioner as rental from the United States under the lease between petitioner and the United States, or from the proceeds of the purchase of the ranch should the United States exercise its option to purchase.

Contemporaneously with the cancellation agreement, the ranch property, with certain excluded area, was leased to the United States for a term beginning on the 21st day of October, 1940 and ending with the 30th day of June, 1941, with option of renewal. The monthly rental for the initial term of

the lease was $10,416.66; this rate was to continue, if the lease was renewed, for a period of one year from the commencement of the original term, and thereafter the rental was to be at the rate of $5,000 per month. The rental in excess of $5,000 per month for the first year of the lease was to take care of the cost incurred in canceling the existing lease with Edward H. Heller.

United States paid the petitioner, pursuant to the terms of the lease, the sum of $10,416.66 per month up to and including October 21, 1941, and petitioner, pursuant to the agreement of the parties, paid over to Heller the sum of $9,000 prior to the end of the taxable year of 1940, and the sum of $56,000 in monthly installments of $8000 each during the taxable year 1941.

Petitioner included in its income tax return for the year 1941 the total rental received during that year from the government and deducted the sum of $56,000 paid to Heller.

The Tax Court held that petitioner is not entitled to this deduction; that such sum could not be treated as an expense in 1941, nor as a capital cost amortizable over the term of the new lease, but that the cancellation cost of $56,000 must be amortized over the unexpired term of the canceled lease.

Briefly stated, the issues here presented are, whether as a matter of law the cost of cancellation of a lease for the express purpose of obtaining a new lease is to be deducted as an ordinary and business expense, or to be amortized over the unexpired term of the canceled lease, or to be amortized over the term of the new lease.

The parties concede that the Internal Revenue Code offers no regulation or statute directly dealing with this issue.

The Tax Court in its opinion in this case in pointing out the difficulties and uncertainties inherent in the situation presented here had this to say:

"The problem of how to deduct amounts paid to cancel leases does not lend itself to a simple logical solution which proved entirely satisfactory in all cases."

The facts in any case usually have much to do with the decision arrived at by a court.

Following out the agreements entered into in this case, the $65,000 paid to Heller, the lessee, for the cancellation of the lease, was to be paid and was paid by the United States Government. The agreements specifically provided that the petitioner, the trustee, was obligated only to pay over the amounts to Heller as they were received from the United States Government. So, in fact, the petitioner was only the go-between for the lessee and the Government to carry out the agreements entered into by the parties. The petitioner merely handed over the money as received from the Government and the $65,000 which went to the lessee, Heller, was not income to petitioner.

We could easily be persuaded that a decision such as was arrived at in the case of Higginbotham-Bailey-Logan Co. v. Commissioner, 8 B.T.A. 566, would be a just and equitable disposition of the controversy here. It does not seem logical to hold the $65,000 to be income subject to tax when it plainly was an expense necessarily involved in the transaction between the Government and the petitioner by which the Government paid the amount in question to secure possession or ownership of the land. This amount was paid out at once to the lessee and as such was of no benefit to the petitioner.

The Commissioner, however, has made a rule that an amount paid for the cancellation of a lease prior to the expiration of its term is not an ordinary and necessary expense deductible in full during the taxable year but is a capital expenditure, the subject of amortization. This rule is based on the decision in the case of Henry B. Miller v. Commissioner of Internal Revenue, 10 B.T.A. 383, overruling the decision in Higginbotham-Bailey-Logan Co., 8 B.T.A. 566, which held that costs incurred for such purpose were deductible as an expense in the year incurred.

The tax court in this case, basing its decision on the Miller case, supra, said:

"An expenditure of this kind was allowed to be deducted as an ordinary and necessary expense in Higginbotham-Bailey-Logan Co., 8 B.T.A. 566, but that case was soon repudiated in Henry B. Miller, 10 B.T.A.

383, in which it was held that an amount paid for cancellation of a lease was in the nature of a capital expenditure to obtain possession during the unexpired term of the cancelled lease and was recoverable through annual deductions for depreciation spread over the unexpired term of the cancelled lease. This rule is now generally accepted. Mertens Law of Federal Income Taxation, Vol. 2, Sec. 12.32 footnote. Charles B. Bretzfelder, 21 B.T.A. 789; Harriet B. Borland, 27 B.T.A. 538."

While it may be admitted that the tax court has gradually evolved such a rule, yet in the case in which it first was promulgated, Henry B. Miller, supra, and in those that followed, the question of how the cost of cancellation was to be amortized was never presented. In all the cases cited in the Tax Court opinion, the taxpayer argued that the cost of cancellation should be deductible as an ordinary expense of doing business while the Commissioner claimed that the amount was amortizable. Neither side ever raised the issue as to the period of amortization and the language of the court in the case of Charles B. Bretzfelder, 21 B.T.A. 789, at page 794, is significant in this respect:

"The remaining question is whether there should be allowed a deduction in 1923 of $5,000 representing the amount paid by the decedent on December 31 of that year to a sublessee for the cancellation of the sublease. The petitioners contend that the amount was an expense incurred by the decedent in the ordinary course of his business and therefore is allowable as a deduction. The respondent contends that the amount constituted a capital expenditure and is not allowable.

\*  \*  \*  \*  \*  \*

"In their brief the petitioners for the first time take exception to the determination by the respondent *as to the period* over which the $5,000 paid for the cancellation of the lease is to be amortized or exhausted. \* \* \* These additional matters *were not issues* in the case and while the pleadings were amended at the hearing they were not amended or offered to be amended so as to raise such matters. *We therefore have not considered* the additional matters presented by the brief." (Emphasis supplied)

In the case of Harriet B. Borland, 27 B. T.A. 538, cited by the Tax Court, the premises on which the cancellation of lease took place were subsequently occupied by "seven separate tenants, four moving in from other parts of the building and three from the outside. The *new leases* made of this space were not all for the same period of time; they varied from three to five years." The new leases and the effect of the amortization of their cost upon the taxable income of the lessor were not in issue. At page 542 of 27 B.T.A. the court said:

"The first issue, which is common to all three of the present consolidated cases, is whether the aggregate amount paid by the petitioners in 1923 to secure cancellation of the lease to the Chicago Surface Lines on a portion of the Borland Building constituted business expense deductible from gross income for that year, or whether the amount should be treated as a capital expenditure, to be returned through deductions prorated over the unexpired term of the canceled lease."

Now, for the first time, the issue as to the period of amortization is squarely raised by the petitioner.

In disposing of the question the Tax Court said:

"The taxpayer argues that the payment for cancellation of the lease was made solely as a prerequisite of obtaining the new lease with the Government, it is a part of the cost of that asset, and it should be recovered ratably over the term of that new lease. It argues further that there is no asset which is exhausting over the unexpired term of the cancelled lease and it is unrealistic to spread the deductions over that longer period when the petitioner is being compensated for the $65,000 through payments from the new lessee during the first twelve months of the new lease. Some merit must be recognized in this argument but a part of it has been considered in the cases cited above. It also overlooks the fact that the cancelled lease related to a definite period and that there is reason in spreading the cost of cancellation over that period. The possession obtained by the cancellation is possession of that period particularly, whether longer or shorter than

the term of the new lease. We see no sufficient reason here to depart from the general rule that the cost of cancelling a lease is recoverable through deductions spread over the unexpired term of that lease."

We do not agree with the conclusion reached by the Tax Court. There is not only "some" but much merit in the argument of petitioner, especially as applied to the instant case. The facts in this case are different from those in the cases cited above. Here the cost of cancellation was expressly, both by the terms of the agreement of cancellation with Heller, and by the lease with the Government, made payable to Heller only upon payment by the Government and was not payable otherwise.

The agreed cost of cancelling the Heller lease was the sum of $65,000; the United States agreed to pay this sum at the rate of $5,416.66 per month in addition to a base rental of $5,000 for a period of the first twelve months of the term, or, in the event of the purchase by the Government of the ranch property, the entire sum of $65,000, or the unpaid balance thereof, to be paid out of the proceeds of the purchase price.

It therefore was expressly agreed that the cancellation cost was to be made only out of rental received from the United States or the proceeds of the sale to the United States pursuant to the option granted by the new lease. No further income would derive to the lessor out of the old lease which was cancelled, and no payments would be made to the lessee, Heller, out of the trust.

No sufficient reason has been brought forward for the conclusion that the cost of cancellation should be a part of the old lease and not the new, except as some suggested theory may be evolved from the cases above noticed and where the exact point was not in issue. We think that that theory should not be applied to the facts presented here.

Here the cancellation of the old lease is expressly to permit the contemporaneous execution of the new. The new lease was to furnish the income and the new lease paid for the production of that income. As was said in Manhattan Life Insurance Co. v. Commissioner, 28 B.T.A. 129 at 131:

"In order to reflect taxable income there should be a correlation between income and the cost of producing it. Where there is a change in any of the elements taken into consideration in determining net income, changes in others may be necessary in order that income may be truly reflected."

In a Memorandum Decision, cited by petitioner herein, The Arcade Co. v. Commissioner, 1942, 46 B.T.A. 1277, the Board held that the unamortized costs of improvements destroyed under a cancelled lease, required to be destroyed in order for the taxpayer to obtain a new lease, were amortizable over the life of the new lease because "it was true under the new lease that petitioner would be expected to reimburse itself for the original outlay."

See also Home Trust Co. v. Commissioner, 8 Cir., 65 F.2d 532.

The stipulation of the facts and the findings of the Tax Court in the instant case clearly establish that the asset acquired with the cancellation cost was the new lease to the government and that the government and not the lessor paid for the cost. Therefore, if the same cannot be charged off by the petitioner as a business expense, and the cancellation of the lease to Heller is to be amortized as a capital expenditure, then under the facts here established and in order to reflect the true income of petitioner, the amortization period is held to be for the term of the new lease.

We are of the opinion that the decision of the Tax Court in this matter denying to petitioner the right to amortize the cost of cancelling the old lease over the term of the new lease, should be and hereby is reversed.