230

SOL LUIS DESCARTES, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; HEIRS OF GENARO CAUTIÑO INSUA, Interveners.

No. 228. Argued January 19, 1950.—Decided April 24, 1950.

Vicente Géigel Polanco, Attorney General, and José A. García
    Malpica, Assistant Attorney General, for petitioner.  Diego
    Guerrero Noble for interveners, complainants in the main
    action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Genaro Cautiño Insua, predecessor of the intervener heirs,
during the years 1940, 1941, 1942, 1943, and 1944 was a part-
ner and controlled more than 50% of the capital of the part-
nership (sociedad) Sucrs. de José González & Co., S. en C.
After an investigation of its accounting books and as a result
thereof, the Treasurer of Puerto Rico notified certain income-
tax deficiencies to the partnership on income not reported and
deductions not permitted by law.  The partnership accepted
the net taxable income determined by the Treasurer and paid
the corresponding tax on said determination.  The Treasurer
then notified deficiencies to Cautiño Insua.[1]  The latter did
not agree therewith and after resorting to the proper admin-
istrative proceeding, appealed to the Tax Court, which after
a hearing on the merits, sustained the complaint in all its
parts.  On petition of the Treasurer, we issued the writ of
certiorari prescribed by § 5 of Act No. 169 of May 15, 1943
(pp. 600, 608).[2]

■■ The petitioner now contends that the respondent
court erred in holding that pursuant to the provisions of §§
4(a)[3] and 15[4] of the Income Tax Act (No. 74 of August 6,

[1] During the years 1940, 1941, 1943, and 1944 his income, according
to the Treasurer, was greater than that reported in his respective returns.
During 1942 however, his share in the profits of the partnership, according
to that officer, was less.  However, as stated by the interveners in their
brief, to be consistent with their theory, their complaint covered the five
taxable years.

[2] See also § 6 of Act No. 328 of May 13, 1949 (pp. 996, 1004).

[3] Section 4(a), as amended by Act No. 31, of April 12, 1941, p. 478,
insofar as pertinent provides:

"...The term 'earnings' shall mean any share or right to share in
a partnership, which belongs to its partners or participants in each tax-
able year out of the earnings or profits of any partnership."  (Italics ours.)

[4] Section 15, as amended by Act No. 31, supra, in its pertinent part
provides:

1925, p. 400) the profits determined by a partnership but not received by the pártners are not subject to the payment of income tax. The question thus raised was decided by this Court adversely to the taxpayer in *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 700 and 70 P.R.R. 364, and affirmed by the United States Circuit Court of Appeals for the First Circuit in *Ballester Ripoll* v. *Descartes*, 181 Fed. 2d 823.

In the opinion rendered by us in that case we stated at page 366 that ". . . it suffices that the right to share in the profits arise for the *socio* to be obligated to pay income tax thereon," and that "his right to share in the profits imposes on the *socio* the obligation to pay the tax."

██ Petitioner also contends that the Tax Court erred in "holding that the Treasurer included as part of the taxable income of a partner profits not acknowledged as such by the partnership, when the evidence introduced in court showed otherwise." Neither from the petition filed by him nor from his brief it clearly appears to what profits he refers. In discussing the legal question of whether or not the undivided profits of a partnership are taxable to the partners, the res- pondent court stated in the course of its opinion that "The situation seems to be even clearer in the case at bar, in which the petitioner seeks to include as part of the taxable income of a partner profits which have not even been considered as such by the partnership, and which, therefore, have not been, or can not be, at the disposal of the partner." This opinion does not show either to what profits did the lower court refer. However, we infer, from the general discussion of this error by the parties, that the Tax Court, as well as the petitioner,

---

"(a) The term '*gross income*' *includes* gains, profits, and income derived from salaries, wages, or compensation for personal service....of whatever kind and in whatever form paid, or from professions, vocations, trades, businessess, commerce, or sales;....also from interest, rent, divi- dends, *partnership profits*, securities, or the transaction of any business. carried on for gain or profit, or gains or profits and income derived from any source whatever;...." (Italics ours.)

meant the sums paid by the partnership on account of the principal of the bonds of the Guayama Irrigation System.

As contended by the intervener, one thing is the net taxable income and another the net distributable income. There is not the least doubt about this, since there are items, for example those of income tax and gifts,[5] that, since they are not deductible for income tax purposes, they form part of the net taxable income of the partnership, and yet they do not form part of the *distributable profits thereof*. Be that as it may, we must make clear that this is not a question of a tax on irrigation but the payment of bonds.[6] This being so, for Income Tax purposes, the items corresponding to those payments were not only not deductible from the gross income of the partnership but once paid were profitable for the partnership and, therefore, for the partners. Consequently, the predecessor of the interveners profited by such payments and his share was taxable as a profit received by him.

The only other question raised by the petitioner is that the Tax Court erred in holding that §§ 16(a)(2) and 32(a)(2) do not forbid a partner who controls or owns more than 50 per cent of the social capital of a partnership to deduct from his gross income the interest paid by him to the partnership.

Section 16 deals with *deductions allowed to individuals* and in its subdivision (a)(2) provides insofar as pertinent that:

---

[5] From January 1, 1944, gifts made within the taxable year by a corporation or partnership are deductible from its net income. See § 1 (c) of Act No. 60 of May 5, 1944 (p. 124). Until then, such gifts were not deductible from the net income of the corporation or partnership.

[6] Although in his notices to the partnership for each and every one of the years in controversy herein, the Treasurer stated that an irrigation tax was involved, the parties subsequently stipulated that such items corresponded "to the percentage which the Treasurer determined that represents the payment of the principal of the bonds of the Guayama Irrigation System." This of course, altered the situation and the partnership itself admitted that inasmuch as a tax was not involved but the payment of the principal of bonds, these items were not deductible pursuant to § 32 (a) (3) (c) of the Income Tax Act.

"(a) In computing net income there shall be allowed as deductions:

"..          .          .          .          .          .          .

"(2) All interest paid or accrued within the taxable year on indebtedness, . . . *Provided,* That no interest is deductible if it is payable between members of one family or between an individual and a corporation with respect to which the individual is the direct or indirect owner of more than fifty (50) per cent of the value of the outstanding stock; or (c) between corporations with respect to which one same individual or corporation is the direct or indirect owner of more than fifty (50) per cent of the outstanding stock of each of said corporation," etc.

If we were to rely only and exclusively on the application and interpretation of the above-copied subdivision, we would probably have to reach the conclusion that the interest paid by a partner to the partnership of which he is a member, notwithstanding the fact that he owns more than 50% of its social capital, would be deductible for income tax purposes inasmuch as that Section forbids the deduction of interest by an individual who is the direct or indirect owner of more than 50% of the value of the outstanding stock of a corporation, and does not refer in any manner to a partner who controls more than 50% of the social capital of a partnership. Statutes should not be construed by taking separately some of its Sections, paragraphs, or sentences, but they should be construed as a whole. *General Motors Acceptance Corp.* v. *District Court,* 70 P.R.R. 898 and *People* v. *Mantilla, ante,* p. 35; *Buscaglia, Treas.* v. *Tax Court, supra; Orta* v. *Registrar,* 60 P.R.R. 768, 772; *De Castro* v. *Board of Commissioners,* 59 P.R.R. 673, 683; *United States* v. *Alpers,* 338 U. S. 680; *Helvering* v. *Morgen's Inc.,* 293 U. S. 121–131, 70 L. Ed. 232; *Hellmich* v. *Hellman,* 276 U. S. 233, 72 L. Ed. 544; *Larkin* v. *United States,* 78 F. 2d. 951; Sutherland, Statutory Construction, 3d ed., Vol. 2, p. 338, § 4704, Crawford, Statutory Construction, p. 258, § 165; Merten's, Law of Federal Income Taxation, p. 75, § 3.13. Sections 17 and 18 of the Civil Code, 1930 ed.

Therefore, in studying and deciding the question now under our consideration we should not confine ourselves to the scope of the aforesaid § 16 (a) (2), but we must take the Income Tax Act as a whole to see whether or not by virtue thereof a partner who owns more than 50 per cent of the social capital may deduct the interest he pays to the partnership. Section 32 of said Act which deals with deductions allowed to corporations and partnerships, provides in the *proviso* of subdivision (a) (2) that *"interest shall not be deductible when payable between an individual and a corporation or partnership, nor the interest payable between* a corporation or *partnership and an individual, when the individual owns or controls, directly or indirectly, or through his family, more* than fifty (50) per cent of the value of the *outstanding stock* of the corporation or more *than fifty (50) per cent of the social capital, . . ."* Under that subdivision it is clear, although the title refers to deductions allowed to corporations and partnerships and not to deductions allowed to individuals, that, as happens in this case, when an individual personally or through his family owns or controls more than 50 per cent of the social capital, the interest paid by that individual to the partnership is not deductible from his income tax. Of course, the fact that the statute speaks of *interest payable* and not of interest paid is of no importance whatsoever. See *Buscaglia, Treas.* v. *Tax Court,* 67 P.R.R. 548, affirmed in *Rullán* v. *Buscaglia,* 168 F. 2d 401. Since it was admitted by the parties that the predecessor of the interveners owned, during the years in dispute, more than 50 per cent of the social capital of the partnership Sucrs. de José González & Co., *S. en C.,*[7] it is unquestionable, pursuant to § 32 (a) (2) *supra,* that the interest paid by him to the

---

[7] In the 7th paragraph of the stipulation subscribed by the parties on June 7, 1948, it is admitted by them that Cautiño Insúa controlled more than 50 per cent of the social capital of the partnership Sucrs. de José González & Co., *S. en C.* during each and every one of the year' sinvolved in this litigation.

partnership of which he was a member was not deductible from his income tax. Deductions are a legislative grace and should be restrictively construed against the person alleging a right thereto. *Buscaglia, Treas.* v. *Tax Court, supra,* and casese cited therein; Merten's *op. cit.,* p. 69, § 3.08.

 In discussing the errors assigned by the petitioner, the intervener contends that the amendments introduced to the Income Tax Act by Act No. 31 of April 12, 1941, p. 479, are not applicable to the taxable year 1940. It is wrong. By express provision of its § 29 said amendatory Act took effect on January 1, 1940. *Cf. Ballester* v. *Tax Court,* 61 P.R.R. 460.

The decision appealed from will be reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández did not participate herein.

---

ON MOTION FOR RECONSIDERATION
June 22, 1950

MR. JUSTICE MARRERO delivered the opinion of the Court.

In our opinion of April 24, 1950 in the above-entitled case, we stated:

"Petitioner also contends that the Tax Court erred in 'holding that the Treasurer included as part of the taxable income of a partner profits not acknowledged as such by the partnership,

when the evidence introduced in court showed otherwise.' Neither from the petition filed by him nor from his brief it clearly appears to what profits he refers. In discussing the legal question of whether or not the undivided profits of a partnership are taxable to the partners, the respondent court stated in the course of its opinion that 'The situation seems to be even clearer in the case at bar, in which the petitioner seeks to include as part of the taxable income of a partner profits which have not even been considered as such by the partnership, and which, therefore, have not been, or can not be, at the disposal of the partner.' This opinion does not show either to what profits did the lower court refer. However, we infer, from the general discussion of this error by the parties, that the Tax Court, as well as the petitioner, meant the sums paid by the partnership on account of the principal of the bonds of the Guayama Irrigation System."

And we reached the conclusion that "the predecessor of the intervener profited by such payments and his share was taxable as a profit received by him."

In their motion for reconsideration the interveners urge now that "the items labelled 'irrigation tax' in the stipulation, merely represent that portion of the tax paid by the partnership for the irrigation service which had been assessed by the Insular Government in order to pay its debt on account of the bonds issued." This situation having been made clear, the question to be determined is whether the sums paid by the partnership José González & Co., S. en C., of which the predecessor of the intervener heirs formed part, to The People of Puerto Rico as irrigation taxes in order to redeem the bonds of the Guayama Irrigation System, were deductible from the gross income of the partnership and whether or not, in the event that they were not deductible, said predecessor was obliged to pay income tax with respect to his corresponding share, as partner of said partnership, in the amounts paid by the latter in such concept. The Treasurer of Puerto Rico holds that those sums were capital expenditures, not deductible by the partnership, and that hence the partners were bound to pay income tax for their share in those expenditures.

The Act of February 29, 1908 (p. 184) authorized the Commissioner of the Interior to continue the study of the different methods of irrigating the plains of Arroyo, Guayama and Salinas. The Act of September 18, 1908 (Spec. Sess. Laws, p. 180) authorized the issuance of bonds of the Insular Government of Puerto Rico to an amount not exceeding three million dollars for the construction of a system of irrigation in Puerto Rico, for the district lying approximately between the Patillas River on the east and the Portugués River on the west, § 8 thereof providing that "to the payment of the interest and principal of the said bonds shall be devoted *the revenues derived from assessment levied* for the respective fiscal years during the life of the said bonds, upon the property included in the Irrigation District . . ."; and § 11 providing that ". . . *the legal title to said property shall continue to be in The People of Porto Rico, but the same shall be held in trust for the benefit of the owners of the lands upon which is cast by law the burden of paying for the benefits conferred by said irrigation system, and of the successors in title of said lands, the purpose and object of this provision being that The People of Porto Rico shall be secured at all times while their credit is so pledged, and up to the time of extinction of all liability as aforesaid.*" (Italics ours); and § 11 of Act 128 of August 8, 1913 (pp. 54 and 67) prescribes the manner in which the Treasurer of Puerto Rico shall calculate the amount of the interest and principal or sinking fund due upon outstanding irrigation bonds and the manner in which the persons or entities benefited by the system shall make payment.[1]

Pursuant to § 32 of the Income Tax Act [2] "(*a*) in computing the net income of a . . . . . partnership subject to the tax imposed by section 28 there shall be allowed as deductions: . . . (3) taxes paid or accrued within the taxable year

---

[1] See also Act 43 of May 12, 1934 (p. 342).

[2] No. 74 of August 6, 1925 (p. 400).

*except: . . . (C) taxes assessed against local benefits of a
kind tending to increase the value of the property assessed."*
(Italics ours.) Section 114 of Income Tax Regulation No. 1
under the aforesaid Act No. 74 of 1925, provides that:

"A tax is considered assessed against local benefits when the
property subject to the tax is limited to the property benefited . . .
Assessments under the statutes of California relating to irriga-
tions, and of Iowa relating to draining, and under certain sta-
tutes of Tennessee relating to levees, are limited to property
benefited, and when it is clear that the assessments are so limited
the amounts paid thereunder are not deductible as taxes . . . .
*When the assessments are made for the purpose of constructing
local benefits, the payments by the taxpayer are in the nature of
capital expenditures and are not deductible. . . ."* (Italics
ours.)

Here the sums involved for the years in question only include
the amounts paid by the partnership to redeem the bonds is-
sued by The People for the irrigation system in the district
where the properties of the partnership are located. There-
fore, there is no question regarding payment of interest on
the bonds, maintenance of the irrigation system nor repairs
thereof.

In *Andrew Little* v. *Commissioner* (1930) 21 B.T.A. 911,
petitioner was the owner of certain real property included in
an irrigation district in the State of Idaho. Under the laws
of that State an irrigation district is a duly constituted tax-
ing authority for the purpose of levying and collecting taxes
for local benefits derived by the property assessed within its
limits. The U. S. Board of Tax Appeals held that it is well
settled that such taxes may be assessed because of the special
benefits derived from a public use; that the assessment is a
tax whether the revenue is used by the district for the pay-
ment by it of its obligation for the principal of or the inter-
est on its bonds; and that the local benefits of an irrigation
district differ materially from local benefits such as grading
and paving streets, laying curbing, etc., since the latter are

used by the public generally, while the former are strictly for the benefit and use of the landowners within the district and are an important factor in the production of income by such landowners; that the construction of the irrigation system actually increases the value of the lands irrigated and in many instances transforms worthless lands into valuable agricultural or grazing lands; that the cost of constructing or acquiring such a system by an irrigation district falls entirely upon the landowners within the district and that *there is no doubt but that such cost is in the nature of a capital expenditure,* citing *Champion Coated Paper Co.* v. *Commissioner,* 10 B.T.A. 433; § 214 (*a*) (3) (*c*) of the Federal Revenue Act of 1921 and § 133 of Regulation 62, which are identical with § 32 (*a*) (3) (*c*) of our Act of 1925 and with § 114 of our Regulation above mentioned, respectively. The same conclusion was reached in *F. A. Smith et al.* v. *Commission,* (1928), 11 B.T.A. 301.

In *Harwell* v. *Commissioner* (1948), 170 F. 2d 517, 519, the United States Court of Appeals for the Tenth Circuit had also before its consideration a similar situation and decided that the taxes assessed for the retirement of the bonds issued for the construction of levees were for the payment of improvements to the land and should have been added to the base, but that the taxes assessed for the payment of interest on bonds were deductible, citing the cases of the United States Board of Tax Appeals which we have briefly discussed.

In *Lee Wilson & Co.* v. *Commissioner* (1932), 25 B.T.A. 840, the United States Board of Tax Appeals had also before its consideration a similar question to the one involved here with respect to taxes assessed by certain drainage, road and levee districts which extended through petitioner's lands. Said Board cited § 234 (*a*) (3) of the Federal Revenue Act of 1921 and 1924 which was couched in the same language used in § 32 (*a*) (3) (*c*) of our Income Tax Act, as well as §§ 133 and 561 of Regulations Nos. 62 and 65 of the Commissioner,

which were likewise identical with our § 114 afore-mentioned. The Board said in its opinion:

> "*No question has been raised as to the fact that the amounts paid to the said districts by petitioner constituted taxes duly assessed and collected by the several districts pursuant to the statutes of Arkansas.* Our only question is whether that portion of such taxes used for interest, maintenance, repairs and expenses is deductible for the purpose of determining petitioner's net income. . . . Under authority of that decision we hold that the portion of taxes paid by this petitioner and allocated to interest for each of the years is deductible . . ." (Italics ours.)

In connection with the question discussed hereunder, see also *Chapman & Dewey Lumber Co.* v. *Commissioner*, (1932) 25 B.T.A. 1166, as well as *Missouri State Life Insurance Co.* v. *Commissioner* (1933) 29 B.T.A. 401, 414.

In the light of § 32 (*a*) (3) (*c*) of the Income Tax Act, of § 114 of Regulation No. 1 and of the cases above cited, the sums paid by the partnership were undoubtedly "taxes assessed against local benefits of a kind tending to increase the value of the property assessed"; and, consequently, they were capital expenditures.[3] Since these expenditures partook of that nature, the items thus paid were not deductible from the gross income of the partnership, they constituted income of the latter, and pursuant to *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 700, and 70 P.R.R. 364, they represented to the predecessor of the intervener heirs, undistributed profits. He was obliged to pay income tax for such profits.

The remaining questions raised in the motion for reconsideration require no further comment.

The reconsideration will be denied.

Mr. Justice Negrón Fernández did not participate herein.

---

[3] Although the partnership admitted that the item "Irrigation Tax" was not deductible from its gross income, we have discussed this question at length in order to determine whether or not the partner was obliged to pay income tax on his share of the sum thus paid by the partnership.