BUSINESS REAL ESTATE TRUST OF BOSTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33469, 42684, 50305.   Promulgated January 15, 1932.

*John P. Wright, Esq.,* and *Schuyler Dillon, C. P. A.,* for the petitioner.

*James L. Backstrom, Esq.,* for the respondent.

OPINION.

ARUNDELL: In 1910 petitioner was the owner of certain improved property located in the business section of Boston. Wm. Filene's Sons Company was the operator of a large department store in the neighborhood and it was in the market for larger quarters. Negotiations were entered into between petitioner and Filene's and a tentative accord arrived at to the effect that, if petitioner should be able to acquire sufficient property adjoining that then owned by it and would on such property erect a suitable building, Filene's would enter into a long term lease for such property at a substantial rental. To that end petitioner acquired in fee certain adjoining property and on other property it acquired 99-year leases. But the property so acquired by it, as well as the property already owned in fee, was improved and occupied by tenants. Time was of the essence of the agreement with Filene's, and if the deal was to be consummated it was necessary that immediate possession be obtained in order that the old buildings might be demolished and a new structure completed by a definite date. To secure the surrender of the leases by the tenants occupying the properties large sums were paid them to move.

The problem for solution is the proper treatment to be accorded the sums paid the various tenants in order to secure immediate possession of the premises so that a new building might be erected and leased to Filene's. Whether or not expenditures of this character should be treated as losses, ordinary and necessary business expenses or capital expenditures to be added to the cost of the land or recovered over a period has been determined very largely from the purpose which prompted the expenditure. In *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, we treated an amount paid by the fee owner to its tenant for the surrender of the lease as an ordinary and necessary business expense where the purpose of the owner was to itself enter into the use of the surrendered property for business purposes. In *H. B. Miller*, 10 B. T. A. 383, where the owner paid for the cancellation of a lease in order to rent the same property to another at a higher rental, the amount so expended was permitted to be recovered over the term that the canceled lease had left to run. In the case of *Columbia Theatre Co.*, 3 B. T. A. 622, where the owner of a 99-year lease paid a sum to the sublessee to surrender his sublease in order that it might erect on the prop-

erty another building in compliance with a provision of the long-term lease, we said such an amount should be spread over the 99-year lease on the theory that the benefit would run for so long a time. Other cases where a somewhat similar problem was treated by the Board are *Charles B. Bretzfelder et al., Executors*, 21 B. T. A. 789, and *Home Trust Co.*, 21 B. T. A. 1255. See also *Douglas Properties*, 21 B. T. A. 347.

A question closely analogous has arisen as to the proper treatment of demolished buildings. Article 142 of Regulations 45 and similar provisions of all later regulations of the Commissioner provide that a loss may be taken upon a voluntary demolition of an old building. It is provided, however, in a case where property has been acquired with a building on it which the purchaser intended to raze and put the property to some other use, that no loss may be taken on the demolition of the building, but that the entire cost should be treated as having been paid for the land. A view similar to that expressed in article 142 will be found in *Liberty Baking Co.* v. *Heiner*, 34 Fed. (2d) 513, and 37 Fed. (2d) 703; and *Parma Co.*, 18 B. T. A. 429.

The respondent, in reliance on *H. B. Miller, supra*, would have the expenditures here involved spread over the remaining life of the canceled leases and as the expiration dates of these leases have long since passed, no allowance would be permitted during the taxable years before us. Petitioner, on the other hand, asks that the expenditures be spread over the term of the lease to Filene's and, if this can not be done, then over the life of the new building.

There is no dispute between the parties that the expenditures in controversy were made solely in order to prepare the way for the new building to be leased to Filene's. It is equally clear that time was of the essence and that unless immediate possession of the entire property was had the deal could not be put through. That such possession could only be had by the expenditures in question is clear. We do not believe that these expenditures made under the circumstances here present should be added to the cost of the land, title to some of which had been owned in fee long before this transaction arose. Nor were the benefits of the expenditures to inure permanently, or in the cases of the 99-year leases over their term. The payments were made to the tenants to obtain immediate possession so that the new building might be erected for lease to Filene's, and for no other purpose. It is the building that is to produce the income and it seems to us both just and reasonable that these expenditures should be added to the building cost and recovered over its life of 40 years.

The petitioners contend that the expenditures made by them were in the amount of $486,495.91. This amount is arrived at, however,

by including certain expenditures which in the present state of the record may not, in our judgment, be included. The sum of $18,500 was expended as a bonus to obtain the 99-year lease on 22–24 Summer Street, and should be treated as a cost of that leasehold estate, recoverable ratably over its term. In one case rents for four months, amounting to $1,266.68, were waived in consideration of the lessee's agreement to cancel the remaining term of his lease. In another instance the lessee was permitted to occupy the leased premises for four months free and there was refunded to him the sum of $1,583.33 for rent paid for April, 1911. This sum, together with a like amount, a total of $3,166.66, is alleged to be the cost of procuring the cancellation of the lease. We have not been informed whether or not petitioner treated the rents accruable under the leases as income and we may not regard the sums as the cost of acquiring the unexpired terms of the leases. In four cases petitioner's own capital stock of a total par value of $50,000 was given in addition to cash for the cancellation of leases. No attempt was made to establish the fair market value of the stock so paid, nor was any evidence offered as to the extent of the stock outstanding or the value of the net assets behind the stock. Accordingly, we must exclude this item as a part of the cost of the building. After making allowance for these items, there remains for recovery ratably over the life of the new building the sum of $413,562.57.