FISHER AND FISHER, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60929.   Promulgated March 12, 1935.

*Charles F. Kelley, Esq.*, and *Frank J. Albus, Esq.*, for the petitioner.

*A. H. Fast, Esq.*, and *F. L. Van Haaften, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent, in auditing petitioner's returns for 1926 and 1927, computed the tax under both section 230 of the Revenue Act of 1926 (at the 13½ percent rate) and section 220 (at the 50 percent rate). Petitioner does not question the computation under section 230. It takes issue with the respondent's application to it of section 220, contending that it does not come within the provisions of that section, and that that section is unconstitutional. Subsections (a) and (b) of section 220, which are all we are concerned with here, are set out in the margin.[1]

The constitutionality of section 220 of the Revenue Act of 1926, and the corresponding provisions of earlier statutes, has been sustained by all the tribunals that have considered the question. See *United States Business Corporation* v. *Commissioner*, 62 Fed. (2d) 754, affirming 19 B. T. A. 809; *Williams Investment Co.* v. *United States*, 77 Ct. Cls. 396; *William C. DeMille Productions, Inc.*, 30 B. T. A. 826. We follow those decisions on this point.

If the petitioner was either " formed or availed of " for the purpose of preventing imposition of surtaxes on its stockholders, it becomes subject to the additional tax. We are convinced that the petitioner corporation was not formed for the purpose described in the statute. The creation of the petitioner was entirely Kelley's idea, and he carried it through not only without help from the Fishers, but even over the opposition of Harry C. Fisher. Kelley testified at length as to his reasons for organizing the petitioner, and we have set them forth in considerable detail in our findings of fact. A restatement of them is unnecessary here and we need say no more than that on this point, on which Kelley was undoubtedly qualified to testify, we give full credence to his testimony and hold that in so far as the formation of the petitioner is concerned it does not come within section 220.

---

[1] Sec. 220. (a) If any corporation however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 230 of this title and shall (except as provided in subdivision (d) of this section) be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be *prima facie* evidence of a purpose to escape the surtax.

The question of whether the petitioner was " availed of " to avoid surtaxes is more difficult to decide. The statute lays down as a rule of evidence that permitting gain. or profits " to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax." In this connection we have said that the statute does " not contemplate that a business should remain static; it must be assumed that any business shall have the right to grow." *William C. DeMille Productions, Inc., supra.* In this case the petitioner made no distribution of its profits in 1926 and 1927, but permitted them to accumulate through both years. It was not until the close of 1928 that a dividend was declared. In 1926 the petitioner had a gross income of $201,701.47 and a net of $92,344.85, and this latter figure represented its surplus at the end of the year. For 1927 its gross income and net were, respectively, $209,320.02 and $103,503.78, and its surplus at the end of 1927 was $168,848.07. The evidence is that, had the contingencies facing the business materialized, a sum of $200,000 would have been insufficient to meet them. From this it follows that the profits accumulated were not in excess of the reasonable needs of the business. Consequently, the accumulation of profits does not.make out a prima facie case and we must go to other evidence in the record to determine whether the petitioner corporation was availed of to escape surtax.

Throughout the record there is apparent a difference of opinion between Kelley, the actual, active manager of the petitioner, and Harry C. Fisher, its nominal head and majority stockholder. Kelley, on the one hand, bent every effort toward accumulating a sufficient surplus to meet the several contingencies facing the business and to keep up its earning power. Fisher, on the other hand, did not even want a corporation to take over the business, and after he " adopted the corporation "—using Kelley's words—he apparently saw no need of accumulating any capital, for he proceeded in 1927 to overdraw his account by more than $73,000. In fact his withdrawals appear to have been greater than indicated by this figure, for some of his personal withdrawals were charged against the firm of Fisher & Fisher. In 1926 one item of over $39,000, representing a withdrawal by Harry C. Fisher, was charged to the firm, so that as a matter of fact he was overdrawn at the end of that year instead of having a balance to his credit as shown by the books. Kelley tried to interest the Fishers in producing Mutt and Jeff moving pictures in order to keep up the earning power of the cartoons, but they refused to go in with him on the deal.

If we were to judge the purpose of using the corporation for carrying on the cartoon business by the conduct of Harry C. Fisher,

we would be confronted with a difficult task. His conduct in 1925 and during the taxable years indicates no purpose but to spend lavishly. Herein lies the solution to the question before us. Fisher did not appear at the hearing. We know, however, from the evidence in both this case and a prior case involving his own income tax for 1925 (see 29 B. T. A. 1041) that he was merely the nominal head of the business. He performed no services either for the petitioner or the firm that preceded it. He had no initial investment in it and refused to put any in. His only contact with it was to draw funds from it for his personal use. In this situation the conduct of the individual who in the majority of cases would be the responsible head of the business cannot be taken as establishing the purpose for which the corporation was used. And because of his lack of responsibility we think it not only proper but necessary to determine the true purpose for which the corporation was created and used from the testimony of Kelley, who was its organizer and actual head. Kelley, it is shown by the evidence, has been actively in charge of Fisher's business affairs since about 1917. He knew Fisher's propensity for spending and he knew too the hazards of the cartoon business; he had seen syndicates fail and knew the necessity for the business to be in a position to make its own distribution of cartoons. Kelley's testimony is directly to the point that in organizing the corporation and operating the business through it he had two objectives in view, one of which was to curb Fisher's lavish spending, and the other to provide capital to meet the contingencies of the business. It is a demonstration of his seriousness of purpose that when in 1927 he discovered Fisher's overdraft—part of which had been charged to Fisher & Fisher—he demanded and secured a restoration to the petitioner.

Considerable stress is placed by respondent on the fact that in 1928 petitioner invested in Cartoonist Court, Inc., a corporation organized to take over Harry C. Fisher's real estate and his racing and breeding stables, and that in subsequent years petitioner made substantial advances to that corporation. We have considered these facts, but we do not believe that they reflect the purpose for which petitioner was operated in 1926 and 1927.

We accordingly conclude that petitioner was not formed nor, during 1926 and 1927, availed of for the purpose of permitting its stockholders to escape surtax.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN, dissenting: I am unable to agree with the prevailing opinion. In my judgment the petitioner has not furnished evidence sufficient to demonstrate that the surplus was not more than was reasonably necessary for the needs of the business. The burden of proof rested on petitioner. I do not believe he has discharged it.

---

McMAHON, dissenting: The "gains or profits" of the petitioner in question here were "permitted to accumulate beyond the reasonable needs of the business; and hence we have *prima facie* evidence of a purpose to escape the surtax." Sec. 220 (b), *supra*. No evidence has been presented which is adequate to overcome the *prima facie* evidence or the defense thereby established for the respondent. Obviously, a *prima facie* showing of this character cannot be overcome by the very same evidence which, under the very same subsection of the statute, establishes it. Furthermore, in addition to this *prima facie* evidence, there likewise appears from the majority report other evidence which supports the position of the respondent in this respect. To illustrate: Harry C. Fisher, who at all times in question here owned at least 98 percent of the petitioner's stock, at the outset did not consider the formation of petitioner necessary, and after its incorporation he did not consider the accumulation of the surplus in question necessary; the corporation conducted its business successfully during the years in question without the stockholders ever paying in any cash to the corporation for its stock; at the end of 1927 Harry C. Fisher owed the petitioner $73,627.27 and his account was, in reality, also heavily overdrawn in 1926; none of the surplus was ever actually used for any of the alleged purposes for which it was accumulated; and it was actually used, promptly after 1927, for wholly different purposes and primarily, if not exclusively, to the personal advantage of Harry C. Fisher.

All of the foregoing applies to the accumulations of surplus by petitioner (1) in the unsuccessful attempt to curb the extravagant expenditures of Harry C. Fisher, (2) in the unsuccessful attempt to make a capital investment in a minority interest in the New York World, and (3) in the attempt at preparation to meet imaginary contingencies, which might have arisen if the Bell Syndicate, Inc., had breached its contract or if Wheeler, its president, had severed his connection with it. There is no showing of a breach of contract on the part of the Bell Syndicate, Inc., or that such breach was ever imminent. The only showing made in this respect is to the contrary. The same is true of Wheeler's severance of his connection with the Bell Syndicate, Inc. There is no adequate showing that the accumulation of surplus in question would have been nec-

essary or adequate if contingencies had arisen because of a breach of contract by the Bell Syndicate, Inc., or Wheeler's severance of his connection with it. There is some showing that they would not have been necessary or adequate if either or both events had occurred to create contingencies.

In connection with what is said herein, see the dissent in *Cecil B. DeMille*, 31 B. T. A. 1161. See also *William C. DeMille Productions, Inc.*, 30 B. T. A. 826.

It is well settled that a corporation is an entity, distinct, separate, and apart from its stockholders and each of them, even where it is almost wholly owned and completely controlled by a single stockholder, as petitioner was by Harry C. Fisher. *Edward Securities Corporation*, 30 B. T. A. 918, and cases cited therein. Hence the personal affairs and business of Harry C. Fisher were not those of the corporation. To the extent that the corporation participated in his personal affairs and business it stepped out of its own business. Its business, as actually carried on, at all the times material here, was that of furnishing to the Bell Syndicate, Inc., exclusively, drawings for the Mutt and Jeff cartoons for sale and distribution, by the latter, to newspapers. While Harry C. Fisher was the originator of these cartoons, he did not even make any of the drawings for them in the years before us. To the extent that the petitioner corporation participated in an unsuccessful attempt to curb Harry C. Fisher's extravagant personal expenditures by accumulating its surplus, and this is the underlying, controlling reason why " the gains or profits " were " permitted to accumulate ", it was concerned with his personal affairs and business and was not confined to its own business; and hence what it did in this respect was " beyond the reasonable needs of the business " and " is *prima facie* evidence of a purpose to escape the surtax ", under applicable provisions of the statute. It is unnecessary to pass upon the question as to whether what petitioner did in these respects was *ultra vires*. That it was " beyond the reasonable needs of the business " is sufficient to establish a *prima facie* case for the respondent, without other grounds; but, as heretofore indicated, there are other grounds.

I also find it unnecessary to pass on the question as to whether the petitioner was " formed " for the purpose denounced by the statute. To sustain respondent's position in these respects it is sufficient that it was " availed of " for that purpose; and the inescapable conclusion is that it was thus " availed of." Sec. 220 (a), *supra*.

Since this prima facie case for respondent has not been overcome, as heretofore stated, I can not agree with the majority in so far as they hold that any of the " additional " taxes in question herein, as specified in section 220 (b), *supra*, are not to be imposed.