**John W. KEILER, II and June Keiler, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 1438.

United States District Court
W. D. Kentucky,
Paducah Division.

Dec. 1, 1966.

Ralph H. Schuette, Paducah, Ky., for plaintiffs.

Ernest W. Rivers, U. S. Atty., Mitchell Rogovin, Asst. Atty. Gen., John L. Smith, Asst. U. S. Atty., for defendant.

## MEMORANDUM

BROOKS, Chief Judge.

The facts of this case are stipulated[1] and it is submitted on the merits. The record and the briefs of the parties have been considered and it is concluded that the expenditures made by the plaintiffs and their associates to obtain early possession of their leased premises are capital expenditures and are to be amortized over the useful life of the new building which they built to lease to Walgreen.

It is stipulated that the "sole purpose in acquiring the subleases was to demolish the old building and to erect a new one in its place." The facts here, therefore, are similar in all material respects to the facts of Business Real Estate Trust of Boston v. Commissioner, 25 B.T.A. 191 (1932). At p. 194 it states:

"There is no dispute between the parties that the expenditures in controversy were made solely in order to prepare the way for the new building to be leased to Filene's. It is equally clear that time was of the essence and that unless immediate possession of the entire property was had the deal could not be put through. That such possession could only be had by the expenditures in quqestion (sic) is clear. We do not believe that these expenditures made under the circumstances here present should be added to the cost of the land, title to some of which had been owned in fee long before this transaction arose. Nor were the benefits of the expenditures to inure permanently, or in the cases of the 99-year leases over their term. The payments

1. See Appendix.

were made to the tenants to obtain immediate possession so that the new building might be erected for lease to Filene's, and for no other purpose. It is the building that is to produce the income and it seems to us both just and reasonable that these expenditures should be added to the building cost and recovered over its life of 40 years."

The quoted reasoning of this opinion, both as to the characterization of plaintiffs' expenditures and the method of amortization, is adopted here. See also Cosmopolitan Corporation v. Commissioner, 18 T.C.M. 542.

The defendant, United States of America, will tender an appropriate judgment.

## Appendix

### STIPULATION OF FACTS

It is hereby stipulated and agreed by and between the parties to this action that the following facts shall be taken as true for purposes of this action, subject, however, to the right of each party to object thereto on grounds of relevancy or materiality. This case is submitted on this stipulation and the pleadings herein before filed.

1. The plaintiffs filed timely joint federal income tax returns for each of the calendar years 1959, 1960, and 1961, copies of which are attached to the complaint. Taxes shown on each of these returns were paid by plaintiffs.

2. After an examination of these returns, the Commissioner of Internal Revenue determined an additional tax liability for each of these years in the respective amounts of $568.10, $3,080.95, and $4,471.73. These amounts were paid on March 23, 1964. Assessed interest thereon, in the amounts of $134.25, $543.22, and $4,991.36, respectively, were paid on April 14, 1964.

3. Plaintiffs filed timely claims for refund for each of the calendar years 1959, 1960, and 1961, copies of which are attached to the complaint.

These claims for refund were rejected by the Commissioner of Internal Revenue by certified letters dated September 23, 1964, copies of which are also attached to the complaint.

4. The Maxwell Property is commercial property located on the north side of Broadway, between Fourth and Fifth Streets, in Paducah, Kentucky. Attached and marked Exhibit A is a diagram of the Maxwell Property as it existed prior to the time that the building now occupied by Walgreen Drug Store (Walgreen Company) was constructed thereon. At that time the premises were occupied by tenants designated on the diagram as Foys, Salms, Rialto (first floor) and Commonwealth (second floor).

5. In 1903 the owners of the Maxwell Property leased it to City Purchasing and Improvement Company (Purchasing), a Kentucky corporation with its principal place of business in Paducah, Kentucky. This lease provided for an annual rental of $2,700 and was to terminate on December 31, 1963.

6. After 1903, but before 1958, Purchasing subleased certain units of the Maxwell Property to the following subtenants, the subleases to terminate on the following dates:

| Tenant | Annual Rent | Date of Termination |
|---|---|---|
| Foys | $3,000 | 12/31/63 |
| Rialto* | 1,430 | 12/31/63 |
| Salms | 7,800 | 12/31/63 |
| Commonwealth | 600 | 12/31/63 ** |

* The Lessee of the Rialto unit was Columbia Amusement Co.

** This sublease was originally to terminate on 5/31/62. It was extended by the Syndicate so that it would terminate on 12/31/63.

**522**

7. In December, 1958, plaintiff, John W. Keiler, II, and certain associates, (the Syndicate)*** purchased the Maxwell Property subject to the existing lease to Purchasing and subject to the existing subleases to Foys, Rialto, Salms, and Commonwealth. At that time plaintiff did not intend to remove the existing improvements from the property. Plaintiff acquired an undivided one-half interest in the Maxwell Property.

8. On February 24, 1959, the Syndicate and Walgreen Company entered into negotiations with regard to the Maxwell Property which culminated in a lease executed on February 5, 1960, a copy of which is attached and marked Exhibit B. This lease was modified by an Agreement dated February 25, 1960, copy of which is attached and marked Exhibit C.

9. In order to enter into the lease with Walgreen Company the Syndicate had to acquire the outstanding subleases, demolish the existing building on the property, and construct in its place a new building. It obtained Purchasing's consent to follow this course of action. Time was of the essence, so it was necessary for the Syndicate to acquire the subleases immediately.

10. The Syndicate would not have been able to consummate the Walgreen lease without first acquiring the Foys, Rialto, Salms, and Commonwealth subleases.

11. The subleases were acquired by the Syndicate pursuant to Exhibits D (Foys), E (Rialto), F (Salms), G (Commonwealth), and H.

Pursuant to the terms of Exhibit D, the Syndicate paid $6,500 to Foys in 1960. Of this, plaintiff paid $3,250. Under the terms of Exhibits D, E, F, G, and

H, it paid the following amounts to Purchasing in each of the following years:

| Year | Amount Paid | Amount Paid by Plaintiff |
|---|---|---|
| 1959 | $ 1,675.75 | $ 834.88 |
| 1960 | 8,337.48 | 4,168.74 |
| 1961 | 14,695.26 | 7,347.63 |

12. The Syndicate's sole purpose in acquiring the subleases was to demolish the old building and to erect a new one in its place.

13. The premises covered by the acquired subleases were never occupied by the Syndicate. The razing of the old building began in the spring of 1960 and was completed in April of 1960. Construction of the new building began during April of 1960 and was completed on November 15, 1960. The Walgreen Company began to occupy the premises on or about November 15, 1960. The estimated useful life of the new building is 33⅓ years.

14. Pursuant to the terms of Exhibits B and C Walgreen Company paid to the Syndicate the following amounts in each of the following years:

| Year | Rentals Received | Plaintiff's Share |
|---|---|---|
| 1960 | $ 1,216.67 | $ 608.34 |
| 1961 | 30,000.00 | 15,000.00 |
| 1962 | 30,000.00 | 15,000.00 |
| 1963 | 30,000.00 | 15,000.00 |
| 1964 | 30,000.00 | 15,000.00 |
| 1965 | 30,000.00 | 15,000.00 |

15. Purchasing paid the Syndicate the sum of $2,700 in each of the years involved. Of this amount, $1,350 was received by plaintiff and reported by him on his federal income tax return in each of these years.

*** The Syndicate is composed of John W. Keiler, II (½ interest), David May (⅜ interest); and Keiler Trust #4 for benefit of Blanche K. Prinzmetal (⅛ interest).

16. In the event of a decision for the defendant, judgment will be entered forthwith. In the event of a decision for the plaintiffs, the amount of the judgment will be computed by the Internal Revenue Service and, subject to the approval of the plaintiffs, will be submitted to the Court for judgment in conformity therewith. If the parties cannot agree as to the correct amount of the judgment, then the matter shall be submitted, along with all relevant evidence, to the Court for computation thereof.

17. The federal income tax return for the year 1961 attached to the complaint was incomplete. The parties agree that plaintiffs may attach thereto the two missing pages thereof, entitled "Jointly Owned Property". These two pages are to be considered as having been attached to the complaint from the time of commencement of this suit.