OPINION On the first issue we think the respondent’s determination should be sustained. Generally an amount paid by a lessor to a lessee for cancellation of a lease prior to the expiration of its term is a capital expenditure made in order to obtain possession of the premises and is deductible over the unexpired term of the canceled lease. Trustee Corporation, 42 T.C. 482 (1964), and the cases cited at page 488. But there is a well-established exception to the general rule. Business Real Estate Trust of Boston, 25 B.T.A. 191 (1932); Keiler v. United States, 285 F. Supp. 520 (W.D. Ky. 1966), affirmed per order 395 F. 2d 991 (C.A. 6, 1968); cf. Clara Hellman Heller Trust No. 7610, 7 T.C. 556 (1946), reversed sub nom. Wells Fargo B. & U. Trust Co. v. Commissioner, 163 F. 2d 521 (C.A. 9, 1947), cited by us with approval in Trustee Corporation, supra. We think petitioner falls within the exception. In the Keiler case the District Court said: ’ Tbe facts of this case are stipulated1 and it is submitted on the merits. The record and the briefs of the parties have been considered and it is concluded that the expenditures made by the plaintiffs and their associates to obtain early possession of their leased premises are capital expenditures and to be amortized over the useful life of the new building which they built to lease to Walgreen. It is stipulated that the “sole purpose in acquiring the subleases was to demolish the old building and to erect a new one in its place.” The facts here, therefore, are similar in all material respects to the facts of Business Real Estate Trust of Boston v. Commissioner, 25 B.T.A. 191 (1932). At p. 194 it states: “There is no dispute between the parties that the expenditures in controversy were made solely in order to prepare the way for the new building to be leased to ITilene’s. It is equally clear that time was of the essence and that unless immediate possession of the entire property was had the deal could not be put through. * * * The payments were made to the tenants to obtain immediate possession so that the new building might be erected for lease to Mlene’s, and for no other purpose. It is the building that is to produce the income and it seems to us both just and reasonable that these expenditures should be added to the building cost and recovered over its life of 40 years.” The quoted reasoning of this opinion, both as to the characterization of plaintiffs’ expenditures and the method of amortization, is adopted here. See also Cosmopolitan Corporation v. Commissioner, 18 T.C.M. 542. [Footnote omitted.] Petitioner contends that the so-called “exception” cases noted above are clearly distinguishable in that in those cases the court either specifically found or it had been stipulated that the “soie” purpose of the payment by the taxpayer (here the $10,000) was to acquire a new lease from a third party or to build a new building over the life of which the payments were to be amortized. Petitioner argues that there was no such stipulation by the parties in the instant case; that in the amendment to agreement of lease between petitioner and Chevrolet dated March 20, 1962, it is stated that the payment of $10,000 “was at least partly in consideration for the new lease” with Chevrolet ; and that petitioner’s accountants treated the $10,000 payment as being attributable to the new lease with Chevrolet. We are not impressed with petitioner’s contention or its supporting argument. It seems clear to us from the facts stated in our findings that while the July 16, 1960, lease between petitioner and Chevrolet was in effect, petitioner from December 26,1961, through February 28, 1962, was negotiating with TraveLodge with a view of entering into a much more favorable lease with TraveLodge for the southeast corner of Second and Liberty Streets. Petitioner and TraveLodge came to an agreement on or about February 28,1962, but before petitioner could lease the southeast corner to TraveLodge it had to get an agreement from Chevrolet to abandon, vacate, and surrender its right, title, interest, and possession to the southeast comer, which it accomplished in the agreement with Chevrolet dated March 20, 1962. We are satisfied that if the negotiations with TraveLodge had not been successful petitioner would not have asked Chevrolet to vacate the southeast corner or have paid the $10,000 to Chevrolet to indemnify and reimburse it for the expense of removing its property from the southeast corner. We hold the payment of $10,000 to be a capital expenditure amortizable over the 25-year lease with TraveLodge executed on March 22, 1962. Business Real Estate Trust of Boston, supra; Keiler v. United States, supra. The respondent’s determination on this issue is sustained. Issue 2 The accumulated-earnings tax (sec. 531-537) in one form or another has been on the statute books at least since the Act of September 8, 1916.[2] Since that time approximately 254 cases involving this tax have been decided.[3] The material provisions of the 1954 Code are in the margin.[4] Ordinarily, the burden of proving that the respondent’s determination is wrong rests on petitioner. Rule 82, Tax Court Rules of Practice; Helvering v. Taylor, 293 U.S. 507 (1935). In 1954, Congress enacted section 534. Respondent, by certified mail, mailed to petitioner the letter pursuant to section 534 (b) and petitioner timely filed a statement intending to comply with section 534(c). At the opening of the trial petitioner filed a motion moving that the Court determine in advance of trial that in accordance with section 534 “the burden of proof with respect to the allegation that all or a part of the petitioner’s earnings and profits were permitted to accumulate beyond the reasonable needs of the business shall be upon the respondent.” After hearing the arguments on the motion the Court stated: I’ll deny the motion. I might say I previously read the statement attached to the Petition and also the additional facts not in the statement itself but referred to, and I definitely deem there are not sufficient facts stated in the statement filed in the Section 534 to justify the shifting of the burden of proof at this time. I'm going to deny the motion, and the Petitioner has the burden of going forward. If I am in error about that, I thinls I can correct it in the final disposition of the case. Proceed with the evidence. The evidence consists of a long stipulation of facts, approximately 90 exhibits, and 164 pages of testimony. It may be noted that the statement submitted by petitioner under section 534(c) applies only to proof of unreasonable accumulation under section 533(a) and has no application to proof of whether petitioner was a “mere holding or investment company” as that term is used in section 533(b). Rhombar Co. v. Commissioner, 386 F. 2d 510, 513 (C.A.2, 1967),affirming 47 T.C.75 (1966). It may also be noted that respondent did not specifically determine that petitioner was a mere holding or investment company but he now contends that the evidence shows that petitioner was such a company and that such fact under section 533(b) adds to petitioner’s burden of showing it was not formed or availed of for the prohibited purpose. All three presumptions, the ordinary and the two presumptions under section 533, are rebuttable. United States v. R. C. Tway Coal Sales Co., 75 F. 2d 336, 337 (C.A. 6, 1935); Trico Securities Corporation, 41 B.T.A. 306, 314 (1940). In enacting the Revenue Act of 1934, Congress by section 351 of that Act levied a surtax on “personal” holding companies[5] and iby section 102(a) of the same Act excluded “personal” holding companies “as defined in section 351” from the imposition of surtax on corporations improperly accumulating surplus. These sections of the 1934 Act now correspond with sections 542 and 532 of the 1954 Code, respectively. Of course, respondent has not determined, nor does he contend, that petitioner is a “personal” holding company for such companies, since the 1934 Act, are not subject to the accumulated-eamings tax. Under section 533(b), the fact that a corporation is a “mere” holding or investment company is prima facie evidence of a purpose to avoid the income tax with respect to shareholders, and under section 535(c) (3), the accumulated-earnings credit is limited to the amount (if any) by which $100,000 exceeds the accumulated earnings and profits at the close of the preceding taxable year. Regardless of where the burden might be, we have found as one of the ultimate facts that petitioner was not a mere holding or investment company during any of the taxable years here in question. In 1953, when petitioner transferred its operating assets to Chevrolet it retained its real estate, plant and buildings, a/nd its insurance business. It leased its real estate north of Liberty Street and its plant and buildings to Chevrolet but retained its real estate south of Liberty Street and its insurance business. It continued to operate its insurance business until it was sold to Hufnagel & Stiners Insurance, Inc., on May 1, 1964. Haying disposed of its Chevrolet agency business, petitioner, in 1961, began mating plans looking to the undertaking of a new business, namely, the operation of a motel. On March 20,1962, Motel was organized as a wholly owned subsidiary of petitioner to operate the Louisville Travelodge as a joint venture with TraveLodge Corp., it being agreed that Motel would have the responsibility of the operation of the motel being conducted by the joint venture. See sec. 1.537-3, Income Tax Regs.[6] We think the record supports our ultimate finding that petitioner was not a “mere holding or investment company” during the years in question as that term is used in sections 533 (b) and 535 (c) (1) and (3). Cf. Seaboard Security Co., 38 B.T.A. 560, 566 (1938); Mellbank Corporation, 38 B.T.A. 1108, 1116 (1938); Industrial Bankers Securities Corporation v. Higgins, 104 F. 2d 177, 181 (C.A. 2, 1939) ; Olin Corporation, 42 B.T.A. 1203, 1214 (1940), affd. 128 F. 2d 185 (C.A. 7, 1942); Jacob Sincoff, Inc., 20 T.C. 288, 292 (1953), affd. 209 F. 2d 569 (C.A. 2, 1953); Nemours Corporation, 38 T.C. 585, 601 (1962), affirmed per curiam 325 F. 2d 559 (C.A. 3, 1963). We now turn to the question of whether, during the taxable years, petitioner permitted its earnings and profits to accumulate beyond the reasonable needs of its business. This is the “central issue.” Faber Cement Block Co., 50 T.C. 317, 327 (1968), acq. 1968-2 C.B. 2. If it did, that fact “shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary.” Sec. 533(a). This is a question of fact and the burden of proof is upon the petitioner. Breitfeller Sales, Inc., 28 T.C. 1164 (1957); John P. Scripps Newspapers, 44 T.C. 453, 467 (1965); Walker v. Commissioner, 362 F. 2d 140 (C.A. 7, 1966), affirming a Memorandum Opinion of this Court. At the outset it must be kept in mind that in determining the “reasonable needs of the business” (sec. 533) consideration must be given to the “reasonably anticipated needs of the business” (sec. 537). Magic Mart, Inc., 51 T.C. 775, 796 (1969). Also, before the accumulated-earnings tax will be applicable, the taxpayer, during the years in question, must have been in a sufficiently liquid position to allow the distribution of dividends. See Smoot Sand & Gravel Corporation v. Commissioner, 274 F. 2d 495 (C.A. 4, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 362 U.S. 976 (1960), rehearing denied 363 U.S. 832 (1960), wherein the Court of Appeals stated, at pages 500-501: Tims, the size of the accumulated earnings and profits or surplus is not the crucial factor; rather, it is the reasonableness and nature of the surplus. Part of the surplus may be justifiably earmarked in the form of reserves, for specific, necessary business needs.3 Again, to the extent the surplus has been translated into plant expansion, increased receivables, enlan'ged inventories, or other assets related to its business, the corporation may accumulate surplus with impunity. * * * Where, on the other hand, the accumulation of surplus is reflected in liquid assets in excess of the immediate or reasonabl/y foreseeable business needs of the corporation, there is a strong indication that the purpose of the accumulation is to prevent the imposition of income taxes upon dividends which would have been distributed to the shareholders. * * ⅜ [Footnote omitted. Emphasis supplied.] Most of petitioner’s accumulated earnings or surplus for the years 1961 through 1964 has been translated into “other assets” such as land, buildings and equipment, etc. The amount of petitioner’s surplus reflected in “other assets” and in “net liquid assets.”[7] is as follows: [[Image here]] The amount of the surplus translated into “other assets” is not available for dividends. Only the working capital[8] in excess of the immediate or reasonably foreseeable business needs of the corporation is so available. Smoot Sand & Gravel Corporation v. Commissioner, supra. What were the immediate or reasonable business needs of petitioner ? Respondent contends that during the taxable years petitioner had no business except its insurance business, which was of little consequence. As previously stated herein we do not agree with respondent that petitioner had no business other than its insurance business. It, through its wholly owned subsidiary, was deeply engaged in the motel venture. Petitioner does not contend that it needed to accumulate any earnings for its insurance business but strongly contends that it needed at least $782,800 for the following: (1) Motel venture_$540, 000 (2) Urban renewal- 20,000 (3) Doublemont Chevrolet loan_ 22,800 (4) Plans for expansion_ 200,000 Total_ 782,800 The $540,000 is made up of the $190,000 note to the Kentucky Trust Co. and the $850,000 note to the Lincoln National Life Insurance Co. All of petitioner’s real property was mortgaged to secure the payment of these loans. At the end of the taxable years in question the remaining unpaid balances of these loans were as follows: [[Image here]] Petitioner was primarily liable on the $190,000 note and its real property on the northeast corner of Second and Liberty Streets was mortgaged to secure the loan. The $350,000 note was secured by a mortgage of petitioner’s real property on the southeast corner of Second and Liberty Streets. The joint venture agreed to be responsible for the repayment of the $850,000 note. Respondent in his brief says: “It is generally understood that the accumulation of earnings for the payment of the corporation’s own debt is an acceptable ground. Regulations, section 1.537-2(b) (3).” These regulations provide that “To provide for the retirement of bona fide indebtedness created in connection with the trade or business * * * may indicate that the earnings and profits of a corporation are being accumulated for the reasonable needs of the business.” Respondent does not concede that petitioner was primarily liable on the $190,000 note. The note, the material part of which is set out in our findings, is in evidence as Exhibit 78-ZZZ, and shows petitioner as a primary obligor. Schuhmann A. Montgomery as vice president signed it first for petitioner and second for Motel. The law also contemplates that a corporation may provide for certain contingencies. Fisher & Fisher, Inc., 32 B.T.A. 211 (1935), affirmed per curiam 84 F. 2d 996 (C.A. 2, 1936). In that case we said (p.218): The evidence is that, had the contingencies facing the business materialized, a sum of $200,000 would have been insufficient to meet them. From this it follows that the profits accumulated were not in excess of the reasonable needs of the business. Petitioner’s contingent liabilities were large and had they materialized petitioner’s liquid assets would not have been sufficient to meet them. During the taxable years in question petitioner’s directors watched the progress of Motel closely and determined that in view of the fact that its profits were so small and its obligations so large it could not afford to declare any more dividends than it did declare. We have often said that we should be reluctant to substitute our business judgment for that of the officers and directors of the corporation. Crawford County Printing & Publishing Co., 17 T.C. 1404, 1414 (1952); Bremerton Sun Publishing Co., 44 T.C. 566, 583 (1965), appeal (C.A. 9) dismissed on stipulation of parties (1966); Faber Cement Block Co., supra at 329; Magic Mart, Inc., supra at 795. Furthermore, the tax is a penalty tax and should be construed strictly and not extended to cover cases which do not fall within its letter. United Business Corporation of America, 19 B.T.A. 809, 826 (1930), affd. 62 F. 2d 754 (C.A. 2, 1933), certiorari denied 290 U.S. 635 (1933); F. E. Watkins Motor Co., 31 T.C. 288, 300 (1958). On the basis of the facts before us, we believe that during the taxable years in question petitioner needed at least $200,000 in working capital to meet the reasonable needs and reasonably anticipated needs of its motel venture business, and we have so found as an ultimate fact. This holding and finding makes it unnecessary to consider the other three business needs strongly contended for by petitioner for the reason that the business needs of the motel venture were in excess of the liquid assets available for dividends. In view of the credit provided for in section 535(c) (1), it is unnecessary for us to consider whether or not petitioner was formed or availed of for the proscribed purpose. John P. Scripps Newspapers, supra at 474; Magic Mart, Inc., supra at 799. In the instant case the credit would be equal to the full amount of the retained earnings. Therefore, even if petitioner were formed or availed of for the proscribed purpose, under section 535(a) the accumulated taxable income, on which the section 531 tax is imposed, would be zero and petitioner would owe no section 531 tax. We so hold. Decision will be entered under Bule 50. See. 3 of that Aet (39 Stat. 756-801) provided in part: “and the fact that any such corporation * * * is a mere holding company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a fraudulent purpose to escape such tax.” Prentice-Hall in Federal Taxes, 1970, vol. 3, has a table of these cases digesting each case under 12 headings such as Reasonable needs of business, Purpose, Burden of proof, Plant expansion, Loans to stockholders, Prior years’ accumulations, Mere holding or investment company, etc. The “Table” is explained at pp. 21,323 to 21,338 and appears at pp. 21,339 to 21,354. SEC. 531. IMPOSITION OF ACCUMÜLATED EARNINGS TAX. In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of— (1) 27⅝ percent of the accumulated taxable income not in excess of $100,000, plus (2) 38⅜ percent of the accumulated taxable income in excess of $100,000. SEC. 532. CORPORATIONS SUBJECT TO ACCUMULATED EARNINGS TAX. (a) General Rule. — The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to Its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed. (b) Exceptions. — The accumulated earnings tax imposed by section 531 shall not apply to— (1) a personal holding company (as defined in section 542). SEC. 533. EVIDENCE OF PURPOSE TO AVOID INCOME TAX. (a) Unseasonable Accumulation Determinative op Purpose. — For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary. (b) Holding or Investment Company. — The fact that any corporation is a mere holding or investment company shall be prima facie evidence of the purpose to avoid the income tax with respect to shareholders. SEC. 534. BURDEN OF PROOF. (a) General Rule. — In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall— (1) if notification has not been sent in accordance with subsection (b), be on the Secretary or his delegate, or (2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or his delegate with respect to the grounds set forth in such statement in accordance with the provisions of such subsection. (b) Notification by Secretary. — Before mailing the notice of deficiency referred to in subsection (a) the Secretary or his delegate may send by certified mail or registered mail a notification informing the taxpayer that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by section 531. * * * (c) Statement by Taxpayer. — Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary or his delegate may prescribe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business. SBC. 535. accumulated TAXABLE INCOME. (a) Definition. — Bor purposes of this subtitle, the term “accumulated taxable income” means the taxable income, adjusted in the manner provided in subsection (b), minus the sum of the dividends paid deduction (as defined in section 561) and the accumulated earnings credit (as defined in subsection (c)). (b) Adjustments to Taxable Income. — Bor purposes of subsection (a), taxable income shall be adjusted as follows : (1) Taxes. — There shall be allowed as a deduction Bederal income and excess profits taxes * * * ******* (e) Accumulated Earnings Credit — - (1) General rule. — Bor purposes of subsection (a), in the case of a corporation other than a mere holding or investment company the accumulated earnings credit is (A) an amount equal to such part of the earnings and profits for the taxable year as are retained for the reasonable needs of the business * * * (2) Minimum credit. — The credit allowable under paragraph (1) shall in no case be less than the amount by which $100,000 exceeds the accumulated earnings and profits of the corporation at the close of the preceding taxable year. (3) Holding and investment companies. — In the case of a corporation which is a mere holding or investment company, the accumulated earnings credit is the amount (if any) by which $100,000 exceeds the accumulated earnings and profits of the corporation at the close of the preceding taxable year. SBC. 537. REASONABLE NEEDS OB THE BUSINESS. Bor purposes of this part, the term “reasonable needs of the business” includes the reasonably anticipated needs of the business. In H. Rept. No. 704, 73d Cong., 2d Sess., union Calendar No. 116, p. 11, 1939-1 C.B. (Part 2) 562, the House in beginning its discussion of personal holding companies said: “Perhaps the most prevalent form of tax avoidance practiced by individuals with large incomes is the scheme of the ‘incorporated pocketbook.’ ” See. 1.537-3 Business of the corporation. (a) TRe business of a corporation is not merely that which it has previously carried on but includes, in general, any line of business which it may undertake. (b) If one corporation owns the stock of another corporation and, in effect, operates the other corporation, the business of the latter corporation may be considered in substance, although not in legal form, the business of the first corporation. * * * Thus, the business of one corporation may be regarded as including the business of another corporation if such other corporation is a (mere instrumentality of the first corporation; that may be established by showing that the first corporation owns at least 80 percent of the voting stock of the second corporation. [Note: In the instant icase petitioner owned 100 percent of the voting stock of Motel.] The term “net liquid assets” is synonymous with such terms as “net quick assets” and “working capital” found in the decided cases. Magic Mart, Inc., 51 T.C. 775, 780 (1969). At this point it may be noted that the parties are in disagreement as to the amount of working capital (current assets less current liabilities). we have found as a fact that the working capital for the years 1961 through 1964 was $101,978.15, $78,490.06, $81,562.53, and $107,004, respectively. Petitioner contends that these amounts should be reduced by the total demand notes of the Montgomerys of $63,676, $53,929.74, $50,429.74, and $43,630.66, respectively; whereas respondent contends that the amounts for 1962 through 1964 should be increased by the notes of Motel of $15,000, $22,000, and $17,800, respectively. In view of our ultimate holding which will appear later in this opinion, we need not discuss these contentions further. Suffice it to say, for present purposes, we abide by our findings.