**HANDLERY HOTELS, INC., a California Corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 79–4288.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1981.

Decided Dec. 14, 1981.

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of

Theodore P. Lambros, San Francisco, Cal., for plaintiff-appellant.

Jay Miller, Washington, D.C., argued for defendant-appellee; Gilbert E. Andrews, M. Carr Ferguson, Washington, D.C., on brief.

Before ANDERSON and NORRIS, Circuit Judges, and TAKASUGI,* District Judge.

## I. BACKGROUND

TAKASUGI, District Judge:

The plaintiff-appellant, Handlery Hotels, Inc. ("Handlery"), lessor, paid $85,000 to its then lessee, Kreis-Grundy Corporation

California, sitting by designation.

("Kreis"), to terminate a lease having an unexpired term of three years remaining. Concurrently, Handlery entered into a new and more favorable lease with Casual Corner of Stonestown, Inc. ("Casual Corner") for a term of twenty years.

Prior to the above transactions Handlery was interested in negotiating with Kreis for an extension of Kreis' existing lease at a higher monthly rental but instead decided to seek a new lease.

Handlery amortized the $85,000 cancellation payment over the three-year unexpired term of the old lease. The Commissioner of Internal Revenue disallowed the three-year amortization period and recomputed the taxes on the basis of a twenty-year amortization period, a period equal to the duration of the new lease. Handlery paid the deficiency and brought this action against the United States for refund.

In the court below, both Handlery and the United States filed motions for summary judgment. The district court denied Handlery's motion and granted the government's motion, holding that the cancellation payment was a cost of obtaining the new lease and therefore should be amortized over the term of the new lease rather than amortized over the unexpired term of the old lease.

The only issue presented in this appeal is whether the lease cancellation payment should be considered a cost of obtaining the new lease and, thus, amortizable over the term of the new lease or a cost of regaining the old leasehold and, thus, amortizable over the remaining unexpired term of the old lease.

Handlery contends the amortization period should be the unexpired term of the old lease (three years) while the government contends that it should be the term of the new lease (twenty years).

## II. DISCUSSION

There are several cases involving lease cancellation payments, but they encompass different fact situations, address a variety of contentions and issues and have conflicting results.

### A. General Rule

When the courts were first faced with the question of what should be the tax effect of the lessor's cost in cancelling a lease, the issue was whether it should be considered a business expense and deductible immediately, or a capital expense and therefore amortized.

The first case to address this issue, *Higginbotham-Bailey-Logan Co. v. Commissioner*, 8 B.T.A. 566 (1927), held that cancellation cost was a business expense. Subsequently, *Higginbotham* was overruled by *Miller v. Commissioner*, 10 B.T.A. 383 (1928), which held that the cancellation cost was amortizable over the unexpired term of the old lease.

In *Miller*, the court stated:

The amount thus expended is a capital expenditure made in order to obtain possession of premises for a period prior to the time the petitioner would have come into possession under the terms of the lease and affords to him no benefits beyond the period for which the payment is made. 10 B.T.A. at 384.

In *Miller*, the taxpayer-lessor contended that the cost was a business expense, and the Commissioner contended it was amortizable over the unexpired term of the old lease. The dissent in *Miller* suggested that the cost should either be a business expense or amortized over the term of the new lease. *Miller* has since been recognized as standing for the general rule of amortizing the cancellation cost over the unexpired term of the old lease.

The cases that have followed the general rule of *Miller* are *Borland v. Commissioner*, 27 B.T.A. 538 (1933); *Manhattan Life Insurance Company v. Commissioner*, 28 B.T.A. 129 (1933); *Berger v. Commissioner*, 7 T.C. 1339 (1946); and *Trustee Corporation v. Commissioner*, 42 T.C. 482 (1964); and, by analogy, *Risko v. Commissioner*, 26 T.C. 485 (1956) (cancellation of partnership agreement); *Fry v. Commissioner*, 31 T.C. 522 (1958), aff'd, 283 F.2d 869 (6th Cir. 1960)

(remainderman's purchase of life estate); *Rodeway Inns of America v. Commissioner*, 63 T.C. 414 (1974) (cancellation of contract).

In all of the above cases, except *Risko*, *Fry* and *Rodeway*, the lessor cancelled an old lease and entered into a new lease. In *Miller* and *Borland*, the issue as presented by the parties was whether the cancellation cost was a business expense or should be amortized over the unexpired term of the old lease. In *Manhattan*, the Commissioner conceded that, under *Miller*, the cancellation cost was amortizable over the unexpired term of the old lease. In *Berger* and *Trustee*, the issue as presented by the parties was whether the cancellation cost should be amortizable over the term of the new lease or the unexpired term of the old lease.

## B. *Business Real Estate Trust Exception to the General Rule*

An exception to this general rule has arisen where the lessor cancels the old lease and the building on the premises is demolished and a new building erected.

In such a case, the courts have held that the cost of cancellation is actually a cost of acquiring a new asset and should, therefore, be amortized over the life of the new asset. In *Business Real Estate Trust of Boston v. Commissioner*, 25 B.T.A. 191 (1932) and *Houston Chronicle Publishing Company v. United States*, 481 F.2d 1240 (5th Cir. 1973), it was held that the cancellation cost was amortizable over the life of the new building. In *Cosmopolitan Corporation v. Commissioner*, 18 T.C.M. 542 (1959), it was held that the cancellation payment was amortizable over the term of the new lease. All of the above cases, except *Houston*, involved a new lease.

In *Latter v. Commissioner*, 20 T.C.M. 336 (1961), the *Business Real Estate Trust* exception was extended to a case where, under the new lease, the lessor was to make extensive improvements (up to the amount of $600,000) to the building. The *Latter* court held the cancellation payment was amortizable over the term of the new lease.

Given the general rule and this exception, *Montgomery Co. v. Commissioner*, 54 T.C. 986 (1970), is irreconcilable. In *Montgomery*, there was no new building erected. The court recognized the general rule but held that the case fell within the *Business Real Estate Trust* exception, presumably applying this exception when a lessor cancels a lease to enter into a more favorable new lease (i. e., extending the exception to the general rule, as was done in the district court in the instant case).

## C. *Wells Fargo Exception to the General Rule*

In *Wells Fargo Bank & Union Trust Co. v. Commissioner*, 163 F.2d 521 (9th Cir. 1947), this court addressed the same issue as it arose in a very peculiar fact situation. The court held, under those facts, that payment for lease cancellation was amortizable over the term of the new lease.

In *Wells Fargo* the lessor cancelled an existing lease that had four years to go, the lessee having the option to cancel at the end of any year of the term. The lessor's cancellation was for the purpose of entering into a new lease for approximately 8½ months, having an option to renew.

The total payment for cancellation was $65,000 broken down into a payment schedule spread out over nine months. The monthly rental under the new lease was $10,416.66. If the new lease was renewed, the monthly rental was to remain at $10,-416.66 until the end of the first year and thereafter was to be $5,000 per month.

The premium paid by the new lessee during the first year, all rental over $5,000 per month, was intended to cover the cost of cancelling the old lease.

The lessor's income under the new lease reflected a higher income during the first year resulting from the new lessee's payment of the premium. Therefore, amortizing the lessor's cancellation payments over that same year (which covered the term of the new lease) provided for a truer reflection of the lessor's income, rather than amortizing over the unexpired four-year term of the old lease.

D. *Analysis*

To determine the appropriate amortization period, a determination must be made as to which asset will provide the income generated from the cancellation payment. Basically, the cancellation gives the lessor the ability to relet for the unexpired term. This is because the length of the unexpired term is the major variable in determining the cost of cancellation while the amount for which the lessor can relet is presumably controlled by the fair rental value. If a lessor decides to cancel an old lease, presumably the rental under the old lease is less than fair rental value, and the fair rental value would control the amount for which the lessor could relet today. Therefore, the only time variable that could affect the value of cancelling an old lease would be the length of its unexpired term. This formula supports the general rule that the cost of cancellation is directly related to the unexpired term of the old lease rather than the term of the new lease and therefore should be amortized over said unexpired term.[1]

This general rule may not survive well in a situation where the lessor, instead of reletting, builds a new building on the premises. Under such a situation it is more difficult to isolate the time period over which the cancellation payment generates income because of the great change in the income-producing asset. As such it may be reasonable to hold that when a lessor cancels an existing lease for the purpose of demolishing and rebuilding, the cancellation payment is amortizable over the life of the new asset (the new lease or new building). However, we do not reach this issue as the district court granted the government's summary judgment motion expressly stating that its ruling was not based on any finding of any change in the building on the premises. Based upon the above analysis, it follows that amortization over the unexpired term of the old lease provides a more reasonable reflection of Handlery's income than would amortization over the new lease term.

The instant case is also distinguishable from the *Wells Fargo* case. This court in the *Wells Fargo* case recognized under the facts therein that the monies from which the lessor paid for the cancellation were directly traceable to the premium paid by the new lessee for the term of the new lease. It was further recognized that, under the peculiar facts of that case, amortization of the cost to the lessor over the period of the new lease would provide the true reflection of the lessor's income since with respect to the premium paid by the new lessee, the lessor was merely the intermediary taking the premium from the new lessee and passing it on to the old lessee as a cancellation payment. Therefore said premium should not be considered income to the lessor.

E. *Conclusion*

Since the amortization term to be applied should provide a true reflection of Handlery's income, we follow the general rule of *Miller, supra,* and hold that the payment made by Handlery to cancel the existing lease is amortizable over the unexpired term of the old lease rather than the term of the new lease. The summary judgment granted by the district court is reversed and the case is remanded for further proceedings.

1. This analysis assumes that the new lease is as long as or longer than the unexpired term of the old lease.